**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**Urbana Division**

| | |
|---|---|
| **LINCOLN DIAGNOSTICS, INC.,** ) | |
| an Illinois corporation, ) | |
|                 **Plaintiff,** ) | |
| v. ) | Case No. 07-2077 |
| ) | |
| **PANATRAX, INC.,** ) | |
| a California corporation, ) | |
|                 **Defendant.** ) | |

# REPORT AND RECOMMENDATION

In April 2007, Plaintiff, Lincoln Diagnostics, Inc., filed a Complaint (#1) against Defendant, Panatrex, Inc., alleging violations of the Lanham Act (15 U.S.C. § 1125(a)), the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/1 *et seq*.), and the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq*.). Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331.

In December 2007, Defendant filed a Motion To Dismiss (#19). In response, Plaintiff filed three memoranda, including Memorandum in Opposition to Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (#24), Memorandum of Law in Opposition to Motion To Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (#25), and Memorandum of Law in Opposition to Motion To Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(3) (#26). After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Defendant's Motion To Dismiss **(#19)** be **GRANTED**.

## I. Background
### A. Factual Background

The following background is based on the allegations in the complaint. Plaintiff is an Illinois corporation in the business of designing and manufacturing skin test applicators for administering allergenic extracts under the names "Multi-Test®" and "Multi-Test® II." Defendant, a California corporation, also markets a line of disposable skin test applicators under

the names "Quick-Test®" and "Sharp-Test®."  Defendant sometimes markets these two products together using the name "Quanti-Test®."

Plaintiff alleges that Panatrex's printed and website advertisements are misleading and likely to cause confusion in the relevant market of purchasers and users of skin test applicators. Plaintiff informed Panatrex that the advertisements are false, misleading, and confusing, but Panatrex refused to stop or change the advertisements.

Plaintiff filed a three-count complaint, alleging violations of the Lanham Act (15 U.S.C. § 1125(a)), the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/1 *et seq*.), and the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq*.).  All claims are based on Defendant's alleged misrepresentations in advertisements published on an internet website and in the *Journal of Allergy and Clinical Immunology* (hereinafter "*Journal*").

### B.  Procedural Background

In December 2007, Defendant filed a Motion To Dismiss (#19), seeking dismissal on several grounds, including lack of personal jurisdiction over Defendant, lack of venue, and failure to state a claim.  In support, Defendant filed a declaration by Chin Chao Chiu, vice-president of Panatrex.  (#20-2.)  Plaintiff filed a Motion To Strike Declaration of Chin Chao Chiu (#22), which the Court granted.  (Text Order dated January 10, 2008.)

Defendant then filed a Declaration of Ray Ling Hsiao, M.D. in Support of Defendant's Motion To Dismiss (#27) and a Second Declaration of Ray Ling Hsiao, M.D. To Support the Motion To Dismiss (#30).  Plaintiff filed motions to strike those declarations (#28, #31).  The Court denied the motions to strike, stating that it would consider Dr. Hsiao's declarations only for purposes of the challenge to personal jurisdiction.  For that purpose, the Court will consider factual averments related to the issue of personal jurisdiction.  It will not consider any argument or opinions expressed in the declarations nor will it consider any factual material when considering the motion to dismiss for failure to state a claim.

Because Plaintiff did not have the benefit of Dr. Hsiao's declarations when it first responded to Defendant's motion to dismiss for lack of personal jurisdiction, Plaintiff's response to the motion to dismiss did not address the relevant averments in the declarations. As a result, the Court allowed Plaintiff ten days in which to file a response to the motion that included addressing Dr. Hsiao's declarations. Plaintiff's subsequent motions to strike contained its responses to the declarations.

## II. Standard of Review
### A. Motion To Dismiss for Failure To State a Claim

When considering a motion to dismiss for failure to state a claim, the Court must accept all well-pleaded factual allegations in the claim as true, and draw all reasonable inferences in favor of the nonmoving party. *Adams v. U.S.*, 391 F.3d 1212, 1218 (Fed. Cir. 2004). The Court should dismiss the claim only if the nonmoving party cannot prove any set of facts consistent with the allegations of the complaint that would entitle him to relief. *Id.*

### B. Motion To Dismiss for Lack of Personal Jurisdiction

The plaintiff bears the burden of demonstrating the existence of personal jurisdiction. *Jennings v. AC Hydraulic A/S,* 383 F.3d 546, 548 (7th Cir. 2004). A motion to dismiss for lack of personal jurisdiction tests whether a federal court has personal jurisdiction over a defendant. FED. R. CIV. P. 12(b)(2). When considering a challenge to personal jurisdiction, courts are not limited to the facts set forth in the complaint, but rather may receive and consider affidavits from both parties. *Nelson by Carson v. Park Inds., Inc.,* 717 F.2d 1120, 1123 (7th Cir. 1983). The Court accepts all well-pleaded jurisdictional allegations in the complaint as true unless controverted by affidavit. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002); *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987), *superceded by statute on other grounds*. If a defendant supplies affidavits challenging personal jurisdiction, a plaintiff must meet those assertions with affirmative evidence that supports the presence of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). Any conflict presented by affidavits must be resolved in the plaintiff's favor. *Hyatt*, 302 F.3d at 713.

When a challenge to personal jurisdiction is based solely on the parties' written materials,

the plaintiff need only make a *prima facie* showing that jurisdiction over the defendant is proper. *Purdue*, 338 F.3d at 782; *Hyatt*, 302 F.3d at 712-13.

### III. Discussion

Defendant argues that the Court should dismiss the complaint for lack of personal jurisdiction over Defendant, improper venue, and failure to state a claim.

#### A. Personal Jurisdiction
#### 1. Legal Framework

"The plaintiff bears the burden of demonstrating personal jurisdiction." *Central States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000) (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). In order to meet this burden, the plaintiff must provide sufficient evidence to establish a *prima facie* case of personal jurisdiction. *Michael J. Neuman & Assocs., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir. 1994). In a federal question case, the defendant must be amenable to service of process and the Court's assertion of personal jurisdiction must satisfy due process requirements. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1940); *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) ("[B]efore a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons."). Under the due process clause of the Fourteenth Amendment, the defendant is subject to personal jurisdiction when it has "certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *RAR, Inc.*, 107 F.3d at 1277 (quoting *Int'l Shoe Co.*, 326 U.S. at 316) (internal citations and quotations omitted).

Amenability to service derives from Federal Rule of Civil Procedure 4(k)(1), which provides that service is effective to establish jurisdiction over the person of a defendant "(A) who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located, or . . . (D) when authorized by a statute of the United States." The

Lanham Act, which is the basis for the claim in Count I, does not provide for nationwide service of process. *See* 15 U.S.C. § 1121; *McMaster-Carr Supply Co. v. Supply Depot, Inc.*, No. 98 C 1903, 1999 WL 417352, at *2 (N.D. Ill. June 16, 1999) (unreported). Therefore, Panatrex's amenability to service is governed by the Illinois long-arm statute (735 ILCS 5/2-209(a)). *See LFG, LLC v. Zapata Corp.*, 78 F. Supp. 2d 731, 735 (N.D. Ill. 1999).

Illinois' long arm statute provides for jurisdiction over a defendant who performs enumerated acts in connection with tort or contract, and further allows the exercise of personal jurisdiction on "any . . . basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-290(c). Because the statute allows the exercise of personal jurisdiction to the constitutional limits, "the statutory analysis collapses into a due process inquiry, and [the courts] need not consider whether [the defendant] engaged in any of the acts enumerated under the long-arm statute." *See e.g.*, *LFG, LLC*, 78 F. Supp. 2d at 735 (citing *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992)); *RAR, Inc.*, 107 F.3d at 1276. Here, Defendant has not disputed that it is covered by Illinois's long-arm statute. *See Logan Prods. v. Optibase Inc.*, 103 F.3d 49, 52 (7th Cir. 1996) (stating that the court only need address the constitutional issue where the defendant conceded it was covered by Wisconsin's long-arm statute).

### 2. Evidence Relating to Personal Jurisdiction

In ruling on a motion to dismiss for lack of personal jurisdiction, courts are not limited to the facts set forth in the complaint, but rather may receive and consider affidavits from both parties. *Nelson*, 717 F.2d at 1123. The parties have provided materials described below that the Court will consider when addressing Defendant's motion to dismiss for lack of personal jurisdiction.

In the complaint, Plaintiff alleges that personal jurisdiction is proper because Defendant committed the alleged wrongful acts in the Central District of Illinois and transacted business in the State of Illinois. (#1, ¶ 4.) The complaint also alleges that a substantial part of the events

giving rise to Plaintiff's claim occurred within the district and have caused damage within the district. (#1, ¶ 5.) Finally, the complaint alleges that Defendant does business within the State of Illinois. (#1, ¶ 5.)

In support of its challenge to personal jurisdiction, Defendant filed declarations by Ray Ling Hsiao, the president of Panatrex. (#27, #30.) Dr. Hsiao testified in his declarations as follows: (1) Panatrex does not own the alleged website, never paid for it, and never operated it (#27, ¶ 6); (2) Panatrex does not have any agents, office, or mailing address in Illinois and does not pay taxes in the State of Illinois (#27, ¶ 23); (3) Dr. Hsaio has conducted a "brief review" of the Panatrex accounts and has not found a physician named Dr. Cynthia Yango in the Panatrex customer list (#27, ¶ 25); (4) Panatrex has no employees residing or working in Illinois or who routinely travel to Illinois (#27, ¶ 28); (5) Panatrex does not own or lease any real property in Illinois (#27, ¶ 29); (6) Panatrex is not registered to do business in Illinois and has not appointed an agent for service of process in Illinois (#27, ¶ 30); (7) Panatrex does not pay income, property, or use taxes to the State of Illinois (#27, ¶ 31); (8) Panatrex does not target any advertising directly toward the State of Illinois, but does occasionally advertise in materials that may enter the State of Illinois (#27, ¶ 36); (#9) Panatrex does not have a distributor, sales representative, or branch company in Illinois (#30, p. 2, ¶ 3); (10) less than one percent of the sales of Panatrex products were shipped to the State of Illinois "in this year" (#27, ¶ 37); (11) "[i]n the year of this litigation," Panatrex had only one customer in Illinois with $2,760 in yearly sales (#30, p. 2, ¶ 3); and (12) the single customer in Illinois has continued to purchase Panatrex products "for years" (#30, p. 2, ¶ 4). All other averments in the declarations are not relevant, or constitute argument or opinion. For example, Dr. Hsiao's statements regarding the readership of the *Journal* (#30, p. 2, ¶¶ 1-2) constitute opinions based on speculation; the Court will not consider them. His statements regarding the Mercedes Benz case (#30, p. 2, ¶¶ 1-2) constitute argument and the Court will not consider them.

In response to Defendant's challenge to personal jurisdiction, Plaintiff filed an affidavit by Gary Hein, chairman of the board of Plaintiff Lincoln Diagnostics. (#26-2.) Mr. Hein testified as follows: (1) before the current litigation, Dr. Hsiao appeared in Illinois to testify in

6

court and to provide a deposition for use in prior litigation between Plaintiff and Panatrex (#26-2, ¶¶ 7-8); (2) the February 2007 issue and other issues of the *Journal*, containing advertisements by Panatrex, was delivered to Lincoln in Illinois (#26-2, ¶ 9); (3) Lincoln personnel have accessed the internet website at www.Panatrex.com from offices in Illinois (#26-2, ¶ 11); (4) before the current litigation commenced, Lincoln received multiple items of correspondence from Panatrex, as well as a telephone call, at Lincoln's office in Macon County, Illinois (#26-2, ¶¶ 11-12); (5) before the commencement of the current litigation, Lincoln sold products to Dr. Cynthia Yango and shipped them to Dr. Yango's offices in Illinois, and those sales amounted to about $11,700 annually from "199" and through the year 2003 (#26-2, ¶ 13); and (6) after 2003, Dr. Yango purchased products from Panatrex rather than from Lincoln (#26-2, ¶ 14). Plaintiff also asked the Court to take judicial notice of the previous litigation between Plaintiff and Panatrex, in which Panatrex stated as one of its proposed conclusions of law that Panatrex "has not contested personal jurisdiction or venue." (Docket No. 00-2148, #30, ¶ 2.)

Plaintiff also filed a copy of a document called "Panatrex, Inc's Motion To Strike Lincoln's Combined Motion" which Panatrex filed in a previous suit. (*See* #26-3.) This document is signed by Dr. Hsiao. (In the previous case, this motion was denied as moot because the court had already ruled on Lincoln's combined motion. *See* No. 00-2148, Minute Entry dated September 10, 2001.) In this unverified statement, Dr. Hsiao commented about Panatrex's tender of a sample of Panatrex's products to Lincoln in December 1999, he acknowledged having communications with Lincoln and sending a product sample, and he stated that Lincoln initiated the correspondence and that the communications addressed packaging trade dress and other issues related to the previous lawsuit. Dr. Hsiao's statement that Lincoln initiated the correspondence contradicts Lincoln's statement in its opposition to the motion to dismiss. (#26, p. 5, stating that "Panatrex voluntarily directed repeated communications to Lincoln its offices in the State of Illinois.") However, neither Dr. Hsiao's document nor Plaintiff's statement in its opposition to the motion are verified and the Court will not consider them for purposes of the motion to dismiss.

### 3. Discussion

A defendant may be subject to personal jurisdiction either by way of general or specific jurisdiction. General jurisdiction is based on contacts of a continuous and systematic nature. Specific jurisdiction is based on claims relating to or arising out of the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 416 (1984) (general jurisdiction); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (specific jurisdiction). Both require minimum contacts (although the minimum contacts are defined differently) and satisfaction of due process. Plaintiff has not expressly stated whether the Court's personal jurisdiction over Defendant is based on general or specific jurisdiction, so the Court will consider both.

Defendant argues that the Court can exercise neither general nor specific personal jurisdiction over Panatrex because Panatrex had essentially no connection or contact with Illinois. As to the website and *Journal* advertisements, Defendant contends that those activities were not directed toward Illinois residents.

Plaintiff responds that the Court has personal jurisdiction over Defendant based on Defendant's website and *Journal* advertising, sales in Illinois, participation in prior judicial proceedings in Illinois including Panatrex's failure to dispute personal jurisdiction and its filing of pleadings seeking affirmative relief in that case, and Panatrex's communications directed to Plaintiff at Plaintiff's Illinois offices regarding the prior litigation.

Plaintiff's brief includes no argument or discussion regarding prior judicial proceedings as a basis for general jurisdiction. *See DDI Seamless Cylinder Int'l, Inc. v. Gen. Fire Extinguisher Corp.*, 14 F.3d 1163, 1168 (7th Cir. 1994) ("An issue must be pressed, must be argued and supported; a bare conclusion is not enough."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . Judges are not like pigs, hunting for truffles buried in briefs."). A defendant's appearance in another action in a particular forum "does not mean that they waived all personal jurisdiction requirements for future actions" in that forum. *See Rozenblat v. Sandia Corp.*, No. 04C3289, 2005 WL 1126879, *2 (N.D. Ill. May 2, 2005) (citing *Mallinckrodt*

*Medical, Inc. v. Sonus Pharmaceuticals, Inc.*, 989 F. Supp 265, 271 (D.C. Cir. 1998)). The fact that Defendant previously defended a suit in Illinois and waived or declined to challenge the issue of personal jurisdiction in that suit does not establish a basis for personal jurisdiction in this case.

Similarly, regarding the correspondence and telephone call, this correspondence occurred between the parties in the prior litigation. Pre-litigation communications do not constitute doing business in the state, nor do they waive a defendant's right to contest personal jurisdiction in subsequent suits. Given that Plaintiff has the burden of establishing personal jurisdiction, it must provide more evidence than its receipt of a single telephone communication and multiple items of correspondence related to prior litigation. Plaintiff has failed to establish that these communications constitute continuous and systematic contacts with the state.

Regarding the alleged Panatrex website, the complaint includes allegations describing some of the information that the website contained. However, neither the complaint nor Mr. Hein's affidavit includes any allegations about the level of the website's interactivity.

Generally speaking, maintaining a internet website is not sufficient to form the basis for personal jurisdiction based on general jurisdiction. *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 833 (N.D. Ill. 2000). Regarding specific jurisdiction, many courts have used a sliding scale analysis when addressing the effect of a website. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp 1119, 1124 (W.D. Pa 1997) (the seminal authority regarding the sliding scale analysis for personal jurisdiction based on operation of an internet website). The Northern District court has explained the sliding scale analysis for considering when personal jurisdiction may be exercised in the context of the internet, noting that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Euromarket*, 96 F. Supp. 2d at 837 (quoting *Zippo*, 952 F. Supp at 1124). The applicability of personal jurisdiction depends on which of three categories the website fits, based on the website's commercial interactivity. The first category consists of situations where the defendant clearly does business

over the Internet, such as entering into contracts.  In this situation, personal jurisdiction is proper. *Id.*  The second category includes interactive websites where a user can exchange information with the host computer; in these cases, the court determines whether the exercise of personal jurisdiction is proper by considering the level of interactivity and nature of the exchange of information that occurs on the website and other factors.  *Id.* at 837-38.  The third category includes passive websites that simply make information available to users.  This category of website does not establish grounds for the exercise of personal jurisdiction.  *Id*. at 833*; Jennings*, 383 F.3d at 549-50 ("The exercise of personal jurisdiction based on the maintenance of a passive website is impermissible because the defendant is not directing its business activities toward consumers in the forum state in particular.").

Here, Plaintiff has failed to provide any information regarding the extent of a user's ability to interact on the website.  In the absence of any pertinent information about the website, the Court cannot determine what significance the website has as to the question of personal jurisdiction.  *See Jennings*, 383 F.3d at 548 (stating that the plaintiff bears the burden of demonstrating the existence of personal jurisdiction).

### a.  General Jurisdiction

A nonresident defendant is subject to general jurisdiction when the defendant has continuous and systematic general business contacts with the forum state.  *See Euromarket Designs*, 96 F. Supp. 2d at 833; *RAR, Inc*., 107 F.3d at 1277.

Neither party has cited any authority on the question of when advertising in national journals provides a basis for the exercise of general jurisdiction in that state.  Furthermore, other than listing the *Journal* advertisement as a factor and noting that the advertisement is the subject of the present lawsuit, Plaintiff has not developed this argument.  Generally, advertising in national journals does not constitute the type of continuous and systematic presence necessary for general jurisdiction.  *See Kohler Co. v. Titon Inds., Inc.*, 948 F. Supp. 815, 816-17 (E.D. Wis. 1996) (finding that, among other things, advertising in national trade journals and magazines that

circulate in Wisconsin without specifically targeting Wisconsin customers in its advertisements did not provide a basis for general jurisdiction).

Regarding sales made in Illinois, Dr. Hsiao testified that Panatrex has only one customer in Illinois who has purchased Panatrex products "for years" (#30, p. 2, ¶ 4). Thus, based on Dr. Hsiao's testimony regarding its single customer, Panatrex has had continuous contacts within Illinois "for years." (#30, p. 2, ¶ 4). However, a corporation's contacts with a forum must be both continuous and "so substantial and of such a nature to justify the exercise of general jurisdiction over it." *Int'l Shoe*, 326 U.S. at 316. The evidence also shows that Dr. Yango made annual purchases totaling $2,760 from Panatrex. The Court is hampered somewhat in its analysis here by the dearth of information relating to Defendant's Illinois sales. Nevertheless, the Court cannot conclude that $2,760 in annual sales constitutes "substantial" contacts so as to justify the exercise of general jurisdiction over Panatrex. *See Lakin v. Prudential Secs., Inc.*, 348 F.3d 704, 709 (8th Cir. 2003) (stating that the "relevant inquiry is not whether the percentage of a company's contacts is substantial for that company; rather, our inquiry focuses on whether the company's contacts are substantial for that *forum*" (emphasis in original)). *Compare Merck & Co., Inc. v. Barr Labs.*, 179 F. Supp. 2d 368, 375 (D. Del. 2002) (holding that less than 1% of total revenue amounting to $991,000 is insufficient to establish general jurisdiction) *with LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) (finding that the court did have general personal jurisdiction over out-of-state corporation that made millions of dollars of sales in-state and had a "broad distribution network" in-state). Thus, the sales of product in Illinois does not provide a basis for the Court to exercise general jurisdiction over Defendant.

For purposes of general jurisdiction, Defendant's contacts with the state include the *Journal* advertisements, website, sales of $2,760 annually to one customer for several years, and the parties' previous litigation and Defendant's communications with Lincoln related to that litigation. Panatrex is not now nor has it ever been incorporated within Illinois, had an agent upon whom service could be made in Illinois, maintained an office in Illinois, owned any real or personal property in Illinois, employed any employees or agents in Illinois, paid any taxes in Illinois, or owned real estate in Illinois. Its Illinois sales are not "substantial," and Plaintiff has

failed to establish that the advertisements on the internet and in the *Journal* constitute a basis for general jurisdiction. Considering these contacts as a whole, Panatrex's connection with the forum do not constitute continuous and systematic contacts with Illinois. As a result, the Court concludes that it cannot exercise personal jurisdiction over Defendant Panatrex based on general jurisdiction.

### b. Specific Jurisdiction

A court can exercise specific jurisdiction over a defendant when the particular claim at issue arises out of or relates to the contacts that the defendant has maintained with the forum state, even though the contacts are neither continuous nor systematic. *Helicopteros,* 466 U.S. at 415 n.8; *Shaffer v. Heitner,* 433 U.S. 186, 204 (1977). Specific jurisdiction requires less contact with a state than does general jurisdiction, but the litigation must arise out of those contacts. *Logan Prods.*, 103 F.3d at 52. To establish specific jurisdiction under the "minimum contacts" analysis, a plaintiff must show that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state and that the exercise of personal jurisdiction over that defendant would comport with traditional notions of fair play and substantial justice. *Jennings*, 383 F.3d at 549. Exercise of specific jurisdiction is proper when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

As noted above, Plaintiff claims that Panatrex is subject to personal jurisdiction in this forum based on Panatrex's advertising via the internet and the *Journal*, and sales of product in Illinois.

The Lanham Act claim in this case does not arise out of or relate to the previous judicial proceedings, including the pre-litigation communications between Panatrex and Lincoln. The claim also does not arise out of the alleged sales to customers in Illinois. The statute provides, in pertinent part, as follows: "Any person who . . . uses in commerce any word, term, name, symbol, or device, . . . which (A) is likely to cause confusion . . ., or (B) . . . misrepresents the nature, characteristics, qualities, or geographic origin of [the] goods, . . . shall be liable in a civil action." 15 U.S.C. § 1125(a). Thus, unlike patent infringement cases, selling is not an element of the statutory violation. *Compare* the Lanham Act (quoted above) to 35 U.S.C. § 271, providing that "whoever without authority makes, uses, *offers to sell, or sells* any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent" (emphasis added).

A claim of false advertising is inextricably related to the dissemination of the allegedly false information. In this case, only the website and *Journal* advertising implicate specific jurisdiction because the claims arise from the purported misrepresentations found in those sources. Nevertheless, all contacts with a forum are relevant to determining whether a defendant intended to serve a particular forum. *Logan Prods.*, 103 F.3d at 53 (stating that courts should consider the overall relationship a defendant has with a particular forum when considering the issue of specific jurisdiction, even though not all contacts give rise to the claim); *but cf. RAR, Inc.*, 107 F.3d at 1278 (in a breach of contract case, stating "[w]e cannot simply aggregate all of a defendant's contacts with a state-no matter how dissimilar in terms of geography, time, or substance-as evidence of the constitutionally-required minimum contacts").

As the Court observed above, the Court lacks enough information about the website to analyze its significance to specific jurisdiction using the sliding scale and it will not speculate. Regarding the *Journal* advertisements, it is undisputed that Defendant purchased advertising in a national journal with some subscribers (at least Lincoln) in Illinois. However, the fact that a defendant could foresee that a journal advertisement would be circulated and have an effect in a particular forum is not sufficient to establish personal jurisdiction. *See World-Wide Volkswagen,* 444 U.S. at 295. When a journal or publication targets a particular forum, then advertising in that journal can provide evidence that the defendant is directing its activities toward the forum. *Noonan v. Winston Hustler Magazine, Inc.*, 135 F.3d 85, 91 (1st Cir. 1998) ("Just as widespread circulation of a publication indicates deliberate action, thin distribution may indicate a lack of purposeful contact.") For example, in *Quality Solutions, Inc. v. Zupanc*, 993 F. Supp. 621 (N.D. Ohio 1997), the district court noted that defendants had advertised in a trade journal in which Ohio subscribers constituted the third largest circulation group. The court stated that "the act of advertising in the trade journal reasonably could be construed as an attempt to solicit business within Ohio." *Id. See also Mattsson v. Gerry Wood Products Co.*, No. 95 C 2314, 1996 WL 147921, *8 (N.D. Ill. Mar. 28, 1996) (stating that a defendant "may not shield itself from the minimum contacts requirement simply by delegating someone else to distribute its advertising"). Here, there is no evidence that the *Journal* focused on Illinois or had an extensive circulation in Illinois. Under these circumstances, after reviewing case law related to this issue, the Court concludes that the act of placing an advertisement in a journal with national circulation does not, by itself, indicate an attempt to solicit business in a particular forum. To decide otherwise would create almost universal personal jurisdiction. Absent more information, the Court concludes that Panatrex's act of advertising in the *Journal* does not show that Panatrex was directing its activities toward this forum. Thus, Plaintiff has failed to establish that the *Journal* advertisements provide a basis for the Court's exercise of personal jurisdiction over Defendant.

The fact that Panatrex has sold products to a single customer for several years does not change the Court's conclusion. *See Logan Prods.*, 103 F.3d at 53 (stating that courts should consider the overall relationship a defendant has with a particular forum when addressing a challenge to personal jurisdiction, even though not all contacts give rise to the claim). Considering all contacts that Panatrex has had with Illinois, the Court concludes that the existence of a website, the *Journal* advertisements, and the single Illinois customer do not establish that Panatrex has satisfied the minimum contacts requirement and purposefully availed itself of the privilege of conducting activities within the forum state.

Plaintiff cites several cases to support its argument regarding personal jurisdiction. In *Davis v. Howse*, No. 02 C 5549, 2003 WL 21317289 (N.D. Ill. June 5, 2003), the plaintiff alleged he entered into a contract with the defendants under which he would be paid for musical compositions that he composed and for his performances in tours organized by the defendants. *Id.* at *4. He alleged that he composed and recorded two compositions that appeared on an album that the defendants released without giving the plaintiff credit as the performaner and/or writer, thus violating the Lanham Act (15 U.S.C. § 1125 (prohibiting false designations of origin and descriptions of fact)). The court stated that the plaintiff's Lanham Act claim arose directly from the defendant's act of marketing and selling an album in Illinois without crediting the plaintiff. The defendants had held concerts and marketed and sold products in Illinois to Illinois consumers; as a result, the court concluded that the defendant had purposely availed itself of the privilege of conducting activities in the state, thus satisfying the requirement for specific jurisdiction. *Davis*, 2003 WL 21317289 at *4. We think that the fact that the defendants held concerts in Illinois as part of their marketing effort distinguishes the situation in *Davis* from Defendant Panatrex's situation. Organizing and holding a concert is significant evidence that the promoter directed its activities toward this forum.

Plaintiff also cited *Publications International, Ltd. v. Burke/Triolo, Inc.*, 121 F. Supp. 2d 1178 (N.D. Ill. 2000). In that case, the plaintiff, an Illinois publisher, entered into a series of contracts with Burke, the defendant, a California corporation, for photographs depicting the plaintiff's recipes for use in the plaintiff's cookbooks. *Id.* at 1181. Burke later displayed those

15

same photographs on a website and offered them for sale. The plaintiff claimed it had exclusive rights to the photographs and sued Burke for breach of contract and false designation of origin, among other things. *Id.* In *Publications*, as part of its marketing effort, the defendant purposely mailed catalogues containing the infringing photographs to Illinois customers. Stating that Burke "could have had no other intention than to generate Illinois sales of the photographs," the court found that "this is sufficient minimum contact with Illinois to exercise specific personal jurisdiction over Burke." *Id.* at 1182.

In *Publications*, specific jurisdiction was based on the direct mailing of catalogs to Illinois customers, among other things. Such conduct is distinguishable in both intent and substance from the act of placing an advertisement in a national journal that may be sent to Illinois subscribers. In addition, Burke had a Chicago representative and an interactive website, and those factors, together with the direct mailing of catalogs to Illinois, established intentional and continuous contacts. *Id*. at 1182-83.

Finally, Plaintiff relies on *Nelson*, 717 F.2d at 1127. In that case, the court found that the defendant had sufficient contacts for the exercise of personal jurisdiction based on an established distribution system through which its products reached the forum state. Here, Plaintiff has not alleged or established that Panatrex had any distribution system for its products.

### B. Improper Venue and Failure To State a Claim

Having determined that Plaintiff has failed to establish a basis for personal jurisdiction over Defendant, the Court need not address these issues.

### IV. Summary

For the reasons stated above, the Court recommends that Defendant's Motion To Dismiss **(#19)** be **GRANTED** based on lack of personal jurisdiction. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten (10) working days after being served with a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 3rd day of April, 2008.

                                                       s/ DAVID G. BERNTHAL
                                                      U.S. MAGISTRATE JUDGE