E-FILED
Thursday, 29 May, 2008  11:52:03 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

---

| | | |
|---|---|---|
| **LINCOLN DIAGNOSTICS, INC., an** | ) | |
| **Illinois corporation,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 07-CV-2077** |
| | ) | |
| **PANATREX, INC., a California corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### <u>OPINION</u>

On April 3, 2008, United States Magistrate Judge David G. Bernthal filed a Report and Recommendation (#49) in this case. On April 15, 2008, Plaintiff, Lincoln Diagnostics, Inc., filed its Objections to Report and Recommendation (#50). On April 25, 2008, Defendant, Panatrex, Inc., filed its Response to Plaintiff's Objections (#51). This court has conducted a careful and thorough de novo review of the Magistrate Judge's reasoning, Plaintiff's Objections, and Defendant's Response. Following this review, this court disagrees with the Magistrate Judge's conclusion that this court lacks personal jurisdiction over Defendant. This court therefore concludes that Defendant's Motion to Dismiss (#19) must be DENIED. Because this court has concluded that it has personal jurisdiction over Defendant in this case, this court also rules as follows regarding the remaining pending motions in this case which have been fully briefed: (1) Plaintiff's Motion for Partial Summary Judgment (#29) is GRANTED; (2) Plaintiff's Motion to Strike (#37) is DENIED; (3) Plaintiff's Motion to Compel and Request for Sanctions (#39) is GRANTED; (4) Defendant's counsel's Motion to Withdraw as Counsel of Record (#41) is GRANTED; (5) Defendant's Motion for Extension of Time (#43) is MOOT; and (6) Plaintiff's Motion to Strike (#46) is GRANTED.

### BACKGROUND

On April 18, 2007, Plaintiff filed its three-count Complaint (#1) against Defendant in this court.[1] Plaintiff alleged that it is an Illinois corporation with its principal place of business in Macon County, Illinois.  Plaintiff alleged that it is a leader in the design and manufacture of skin test applicators for administering allergenic extracts.  Plaintiff alleged that it manufactures and sells a distinctively packaged line of disposable skin test applicators under the names "Multi-Test®" and "Multi-Test®II."  Plaintiff alleged that Defendant is a California corporation with its principal place of business in Placentia, California.  Plaintiff alleged that Defendant has marketed for sale, sold and delivered, in interstate commerce, a line of disposable skin test applicators used to apply allergenic extracts for epicutaneous skin testing under the names of "Quick-Test®" and "Sharp-Test®" and sometimes markets these two products together using the name "Quanti-Test®" (collectively the "Panatrex Products").  Plaintiff alleged that Defendant commenced marketing and advertising the Panatrex Products through printed advertisements and that one of the advertisements appeared in the February 2007 issue of *The Journal of Allergy and Clinical Immunology* (the "Journal"), a respected journal among allergy clinicians.  Plaintiff also alleged that Defendant commenced marketing and advertising the Panatrex Products through its website available to persons using the Internet at www.Panatrex.com.  Plaintiff alleged that Defendant's printed and website advertisements are misleading and likely to cause confusion in the relevant market of purchasers and users of skin test applicators for human allergen tests.  Plaintiff attached a copy of Defendant's advertisement in the Journal as Exhibit 1.

In Count I, Plaintiff alleged that, in marketing the Panatrex Products using advertisements

---

[1] Plaintiff had previously sued Defendant in this court in Case No. 00-2148.  This case was terminated on May 1, 2001.

which are misleading and likely to cause confusion, Defendant violated § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), causing substantial and irreparable injury to Plaintiff and from which Defendant has received economic benefits and profits.  In Count II, Plaintiff alleged that Defendant engaged in deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. 510/1 et seq. (West 2006)), causing Plaintiff substantial and irreparable injury.  In Count III, Plaintiff alleged that Defendant engaged in acts of unfair methods of competition and unfair or deceptive acts or practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. 505/1 et seq. (West 2006)), causing Plaintiff substantial and irreparable injury as well as economic losses.  Plaintiff sought injunctive relief as well as damages and recovery of its reasonable attorney's fees and costs.

On May 14, 2007, Defendant filed an Answer and Affirmative Defenses (#5).  A Rule 16 conference was held on June 15, 2007, before Judge Bernthal.  On June 27, 2007, a Discovery Order (#17) was entered.  The case was scheduled for a final pretrial conference on August 8, 2008, at 11:00 a.m. and a bench trial on August 25, 2008, at 9:00 a.m.  The Discovery Order further stated that all fact discovery, including depositions of non-expert witnesses, was to be completed by December 31, 2007.  All discovery, including the depositions of experts, was to be completed by April 15, 2008. The Discovery Order stated that "[a]ll responses, answers, and objections to written interrogatories (pursuant to Fed. R. Civ. P. 33), requests for production (pursuant to Fed. R. Civ. P. 34) and requests for admission (pursuant to Fed.  R. Civ. P. 36) shall be deemed timely if served within forty-five (45) days after service of the underlying interrogatories, requests for production

and/or requests for admission upon the party responding, answering, or objecting to the same."[2]

On July 12, 2007, Judge Bernthal entered an Order (#18) which granted in part and denied in part Plaintiff's Motion to Strike Defendant's Affirmative Defenses. In the Order, Judge Bernthal stated:

> The Court notes that a number of the defenses would be more appropriately raised in the form of a motion to dismiss. These include the first defense (failure to state a claim), tenth defense (improper venue), twelfth defense (lack of standing), and thirteenth defense (lack of personal jurisdiction). As a practical matter, the Court cannot address the merits of those defenses unless they are raised in a motion to dismiss. Accordingly, the Court encourages Defendant to file a motion to dismiss addressing the aforementioned defenses, or to withdraw them as soon as feasible if Defendant determines that they lack merit.

Almost five months later, on December 4, 2007, Defendant filed a Motion to Dismiss (#19). Defendant argued that it was not subject to this court's jurisdiction, that venue was improper and that the Complaint failed to state a claim upon which relief may be granted. In support of its Motion to Dismiss, Defendant filed the unsworn declaration of Chin Chao Chiu. Defendant also filed a Memorandum in Support (#2), which included brief, rather undeveloped arguments in support of the issues raised by Defendant. On December 5, 2007, Defendant filed a Motion for Protective

---

[2] The Discovery Order therefore allowed the parties more time for responding to written discovery than the relevant discovery rules, which allow 30 days unless a shorter or longer period is stipulated by the parties or ordered by the court. See Fed. R. Civ. P 33(b)(2), 34(b)(2)(A), 36(a)(3).

Order to Stay Discovery (#21) arguing that discovery should be stayed pending a ruling on the Motion to Dismiss.

On December 19, 2007, Plaintiff filed three separate responses to Defendant's Motion to Dismiss (#24, #25, #26). Plaintiff attached the sworn Declaration of Gary L. Hein, Jr., in support of its Memorandum in Opposition to Motion to Dismiss (#26) regarding lack of personal jurisdiction and improper venue. In his Declaration, Hein stated that Plaintiff had received copies of the Journal, which included Defendant's advertisements, in Illinois and that Plaintiff had accessed Defendant's website from Illinois. Hein further stated that Plaintiff had received multiple items of correspondence directed to its office in Illinois from Defendant regarding the presently pending litigation, and had received telephone communication from Defendant in Illinois. Hein also stated that, from 1999[3] through 2003, Plaintiff had a customer by the name of Cynthia Yango, M.D., whose offices are located in Illinois and who purchased approximately $11,700 annually in products. Hein stated that Dr. Yango has purchased products from Defendant following calendar year 2003. Plaintiff argued that this court could properly exercise personal jurisdiction over Defendant because: (1) Defendant violated the Lanham Act within the Central District of Illinois; (2) Defendant transacts and does business in Illinois; (3) Defendant's wrongful acts occurred throughout the United States, including within the Central District of Illinois, and damages caused by these wrongful acts occurred within the Central District of Illinois; and (4) Defendant has relied upon and accepted the protections and benefits of the laws of the State of Illinois in Defendant's conduct of business within Illinois. Plaintiff noted that it had requested documents and records regarding Defendant's sales in

_____

[3] The declaration included an obvious typographical error and stated that the year was "199." This court will assume Hein meant to say 1999.

5

Illinois but that, to date, Defendant had not produced any such requested information or documents.

Plaintiff also filed a Motion to Strike Declaration of Chin Chao Chiu (#22).  Plaintiff stated that, in attempting to schedule depositions in this case, Defendant's counsel informed Plaintiff that "Chin Chao Chiu lacked information relevant to the above-referenced litigation and further lacked involvement with the operations of Panatrex."  Plaintiff also pointed out that the Declaration was not made under oath.

On December 28, 2007, Defendant filed the Declaration of Ray Ling Hsiao, M.D., in support of Defendant's Motion to Dismiss (#27).  Hsiao's six-page Declaration was made under penalty of perjury.  Hsiao stated that he is a Taiwan citizen living in Taipei, Taiwan, and is the president of three companies, including Defendant.  One of the statements included in the lengthy Declaration was that Defendant was not the owner of the website referenced in Plaintiff's Complaint, and that Defendant "never paid for this web site, and never operated the web site."

On January 10, 2008, Judge Bernthal granted the Motion to Strike Declaration of Chin Chao Chiu, noting that it was not made under oath and could not be considered by the court.  Also on January 10, 2008, Judge Bernthal, by text order, denied Defendant's Motion for Protective Order to Stay Discovery.

On January 21, 2008, Plaintiff filed a Motion for Partial Summary Judgment on the Issue of Liability (#29).  Plaintiff stated that, on November 5, 2007, Plaintiff served Defendant with Interrogatories, Requests for Production and Requests for Admission of Facts.  Based upon the Discovery Order, which allowed the parties 45 days to respond to written discovery, Defendant's responses were due on December 20, 2007.  Plaintiff stated that Defendant had never responded to

Plaintiff's Requests for Admission of Facts, and the time for responding had passed.  Plaintiff stated that Defendant's failure to respond to the Requests within the applicable time period constituted admissions of the Requests pursuant to Rule 36 of the Federal Rules of Civil Procedure.

Based upon Defendant's admissions, Plaintiff set out a statement of numerous Undisputed Material Facts.  This statement included the undisputed fact that Defendant "regularly and systematically sold the Panatrex Products to one or more customers in the State of Illinois."  The statement also included the undisputed facts that Defendant "engaged in the marketing of the Panatrex Products by various means, including the use of published advertisements in publications, including journals read by allergy clinicians, which journals are regularly and customarily transported into the State of Illinois for readers who are citizens of the State of Illinois" and that, "[i]n placing its printed advertisements in publications regularly and customarily sold or transported into the State of Illinois, [Defendant] knew that its printed advertisements . . . would be transported into the State of Illinois for use and to be read by citizens of the State of Illinois."  The statement included the undisputed fact that Defendant "has regularly and systematically marketed and advertised for sale the Panatrex Products within the State of Illinois" and that, for a period of not less than five years, Defendant "has regularly and systematically obtained the benefits and protections of the laws of the State of Illinois."  The statement further included Defendant's admission that Defendant's claims regarding the Panatrex Products in printed advertisements and on the website owned, operated or controlled by one of Defendant's employees, agents, officers or directors,  were false or misleading and were known to be false by Defendant when made.

Based upon the lengthy statement of Undisputed Material Facts set out in its Motion, Plaintiff argued Defendant sought to market its products by "combining" two separate and distinct

7

products and advertising the two products by way of claims that cannot be true for both and which are literally false as to either. Plaintiff further argued that Defendant claimed to possess the approval of the FDA though Defendant possesses no such approval. Plaintiff therefore argued that it was entitled to summary judgment on the issue of liability as to its claims under § 43(a) of the Lanham Act, the Illinois Uniform Deceptive Trade Practices Act, and the Illinois Consumer Fraud and Deceptive Business Practices Act.

Also on January 21, 2008, Plaintiff filed a Motion to Strike Declaration of Ray Ling Hsaio (#28). Plaintiff noted that the Declaration, which stated that it was filed in support of Defendant's Motion to Dismiss, did not provide any explanation regarding which portions of the Motion to Dismiss were supported by the lengthy Declaration. Plaintiff further noted that the Declaration was not filed until nine days after Plaintiff filed its Responses to the Motion to Dismiss. Plaintiff argued that Defendant had not "asserted or established any reason for its untimely tender of the Hsiao Declaration or any reason for its prior unavailability." Plaintiff also again noted that Defendant had not responded to its Requests for Admission of Facts, arguing that Defendant's failure to file any timely response, objection or denial to the Requests for Admission of Facts rendered all of the statements therein admitted. Plaintiff argued that Hsiao's Declaration was nothing more than Defendant's "efforts to assert improperly opposition to matters which should be deemed admitted by [Defendant]."

On January 28, 2008, Defendant filed a Second Declaration of Ray Ling Hsiao, M.D., to Support the Motion to Dismiss (#30). On January 29, 2008, Plaintiff filed a Memorandum in Response and Opposition to Second Declaration of Ray Ling Hsiao, M.D. (#31), which was docketed as a Motion to Strike. Plaintiff noted that, as with Hsiao's first Declaration, Plaintiff and

the court were required to speculate as to the manner in which the second Declaration was intended to support any relief sought by Defendant in its Motion to Dismiss.  Plaintiff argued that there were numerous problems with the untimely and questionable statements included in the second Declaration, and again pointed out that Defendant could not properly dispute facts which had been admitted by Defendant.

On February 7, 2008, Defendant filed a Response to Motion to Strike Declaration of Ray Ling Hsiao (#32).  Defendant stated that the Declaration was filed to provide information on Defendant's activities within the district.  Defendant further stated that the Declaration supported Defendant's contention that this court does not have personal jurisdiction over Defendant and that venue is not proper in this district.  Defendant stated that "[d]istance and language barriers have contributed to delays in filings and responses."

On February 14, 2008, Defendant filed a two-page Response to Motion for Partial Summary Judgment (#33).  Defendant stated that it had submitted a response to Plaintiff's Requests for Admission of Facts.[4]  Defendant did not dispute that the response was untimely.  Defendant did not specifically respond to any of the Undisputed Material Facts listed by Plaintiff in its Motion.  Instead, Defendant denied a few of the facts, including stating that Defendant "has denied making all of the alleged statements from panatrex.com."  Defendant argued that there were material issues of fact so that partial summary judgment on liability was inappropriate.  Defendant also stated that, in the alternative, it "would move pursuant to Rule 36(b) to withdraw any facts admitted inadvertently by their failure to respond to the discovery matters on a timely basis."  The only

---

[4] Defendant stated that the response was attached as Exhibit 1.  However, nothing was attached to the document.

explanation Defendant gave for failing to timely respond to discovery requests was that it had filed a motion seeking to delay discovery until after a ruling on the Motion to Dismiss. Defendant stated that "[w]hen the motion for protective order was denied, the discovery materials were not filed in time."

On February 21, 2008, Judge Bernthal entered two Orders (#34, #35) which denied Plaintiff's Motions to Strike the Declarations of Ray Ling Hsiao. Judge Bernthal stated that he would consider the Declarations only for purposes of determining the existence of personal jurisdiction. Judge Bernthal did not address the effect of Defendant's failure to timely respond to Plaintiff's Requests for Admission of Facts.

On February 22, 2008, Plaintiff filed a Reply to Defendant's Response to Motion for Summary Judgment (#36). Plaintiff stated that it did not receive a response to the Requests for Admission of Facts served on Defendant until February 7, 2008. Plaintiff then noted that Defendant's Response to the Motion for Partial Summary Judgment did not comply with Rule 7.1(D) of the Local Rules of the Central District of Illinois. Plaintiff argued that Defendant's failure to file a Response in compliance with this court's Rules should result in the entry of summary judgment in Plaintiff's favor. Plaintiff also filed a Motion to Strike Defendant's Response (#37) and Memorandum in Support (#38) based upon Defendant's complete failure to comply with Rule 7.1(D).

In addition, Plaintiff filed a Memorandum of Law in Opposition to Defendant's Motion to Withdraw Admissions to Requests for Admission of Facts (#40). Plaintiff responded to Defendant's one-sentence request, included in its Response, that it be allowed to withdraw its admissions of facts. Plaintiff noted that Defendant offered no reason or excuse for the delay in responding to the

Requests for Admission of Facts.  Plaintiff also pointed out that, although Defendant is now attempting to deny ownership or control of the Panatrex website, it had earlier acknowledged such control in letters sent to Plaintiff.  Plaintiff attached the sworn Declaration of Gary L. Hein, Jr.  Hein stated that, prior to the commencement of this litigation, he participated in conversations with Defendant and also received correspondence from Defendant in March 2007 and May 2007.  Plaintiff attached a copy of a letter dated March 23, 2007, from Ray L. Hsiao to Hein and a copy of a letter dated May 7, 2007, to Hein from Chin Chao Hsiao, who identified herself as the wife of Ray L. Hsiao.  Both letters discussed the representations included on the Panatrex website and discussed correcting or revising the website.

Plaintiff also filed, on February 26, 2008, a Motion to Compel and Request for Sanctions (#39).  In this Motion, Plaintiff stated that, in addition to serving written discovery on Defendant on November 5, 2007, it also attempted to schedule the depositions of Dr. Hsiao and his wife, as well as corporate representatives with knowledge regarding specific matters relevant to the case, in December 2007.  The deposition notices specifically requested testimony regarding issues relevant to Defendant's sales and business activities in the States of Illinois.  In response to the scheduled depositions, Defendant filed its Motion for Protective Order to Stay Discovery and informed Plaintiff that Defendant would not make these persons available for depositions.  Plaintiff stated that Defendant provided a Response to Interrogatories on February 14, 2008, which was not answered under oath, was not signed by the person making the answers, contained incomplete answers, contained false answers, and interposed untimely objections.  Plaintiff stated that, as of the date of the Motion to Compel, Defendant had not filed any response to Plaintiff's Requests for Production. Plaintiff stated that it had attempted to confer with Defendant's counsel regarding the problems with

discovery.

Plaintiff attached a copy of the Interrogatories, Requests for Production and Notices of Depositions it served on Defendant, as well as a copy of Defendant's purported Response to Interrogatories. In response to Plaintiff's interrogatory asking Defendant to "[i]dentify all sales and/or business communications directed by Panatrex into the State of Illinois" for the calendar years 2003 through 2007, Defendant responded that "it does not maintain records for sales just into the State of Illinois, or any other individual state." Plaintiff sought an Order compelling Defendant to respond fully and completely to the Interrogatories and Requests for Production served on it and compelling Defendant to produce corporate representatives for deposition. Plaintiff also sought payment from Defendant of the attorney's fees and costs it had incurred as a result of Defendant's failure to respond to written discovery in a proper and timely manner.

On March 12, 2008, Defendant's counsel filed a Motion to Withdraw as Counsel of Record (#41). Defendant's counsel stated that "Defendant and counsel have irreconcilable differences over issues out of this litigation as well as over management and direction of this litigation." Defendant's counsel stated that he was unable to represent Defendant and moved to withdraw as counsel. Also on March 12, 2008, Defendant filed a Motion for Extension of Time (#43). Defendant stated that it needed additional time to find an attorney and respond to Plaintiff's Motion to Compel. Defendant stated that a "proper response should be provided by the counsel representing the Defendant in further proceedings." Defendant also sought additional time to respond to Plaintiff's Motion to Strike. Defendant stated that "the withdrawing attorney has not been working with the Defendant to file a response" and that "the incoming attorney should have an opportunity to respond."

On March 12, 2008, Plaintiff filed a Response to Motion to Withdraw as Counsel of Record

12

(#42) stating that it had no objection to the Motion to Withdraw.  However, Plaintiff stated that, in prior litigation between the parties, "Dr. Hsiao tendered documents and pleadings on behalf of Panatrex to the District Court without the aid, assistance or representation of legal counsel." Plaintiff suggested that Defendant should be advised that efforts by Dr. Hsiao to provide legal representation to Defendant would not be countenanced by the district court.  Plaintiff also stated that it did object to further delays in the filing of responsive pleading due from Defendant regarding the numerous motions still pending in this case.  Plaintiff also filed a Response to Motion to Extend Time (#44).  Plaintiff expressed its frustration with Defendant's further request "to extend time for activities which should have been concluded long ago."

On March 14, 2008, Defendant filed a Response to Plaintiff's Motion to Compel and Request for Sanctions (#45).  This Response was signed by Ray Ling Hsiao, M.D., on behalf of Defendant. The Response was rambling and included some incoherent and obviously contradictory statements. For example, the Response stated that "Defendant is not the owner of the said web site" and "Defendant does not operate the said web site."  However, the Response also stated that "Defendant did not refuse to change the content of the said advertisement."  Defendant's counsel attached a "Disclaimer of Filing" to the Response.  The disclaimer stated that Defendant prepared the response to the Motion to Compel.  Defendant's counsel stated that he did not prepare the response, but had been asked to file the response.  Defendant's counsel stated that Defendant was in the process of finding an attorney to represent it in this matter and wanted to get the response filed.  Defendant's counsel stated that "[i]n the interest of best representing the client and making full disclosure to the court, I submit their response at their direction."

On March 14, 2008, Judge Bernthal entered a text order directing the clerk to send a copy

13

of Defendant's counsel's Motion to Withdraw as Counsel of Record to Defendant, c/o its president,
Ray Ling Hsiao, in Placentia, California.  Judge Bernthal stated that, if Defendant wished to object
to the motion, it must file its objections in writing within 14 days.   A later text order extended the
time for objections to 21 days.  Judge Bernthal, later on March 14, 2008, entered another text order
in this case.  He stated that the court had received a letter from Ray Ling Hsiao which included a
document entitled the Third Declaration of Ray Ling Hsiao, M.D. to Support the Motion to Dismiss.
Judge Bernthal directed the clerk to return the correspondence and document to the sender "who is
not authorized to make filings on behalf of the Defendant corporation."  Judge Bernthal noted that
the only exception was that a corporate officer could respond to the pending motion by counsel for
leave to withdraw.

Also on March 14, 2008, Plaintiff filed a Motion to Strike Defendant's Response to the
Motion to Compel (#46).  Plaintiff stated that Defendant's Response appeared "to be more of an
effort by [Defendant] to present factual information to the District Court without any requirements
that such factual information be evidentiary in nature or relevant to any matter related to the Motion
to Compel."  Plaintiff further stated that, although it certainly understood Defendant's counsel's
reluctance to sign Defendant's response, "the rules applicable to litigants appearing before the
District Court do not permit a party to appear by a non-attorney and have such documents filed by
an attorney."  Plaintiff also pointed out that the response is "unintelligible."

On March 27, 2008, Defendant's attorney filed a Response to Plaintiff's Motion to Strike
(#47) and also filed a Disclaimer of Filing, which included language identical to the earlier
Disclaimer.  Defendant's Response was obviously prepared by Dr. Hsiao and consisted almost
entirely of completely unsupported factual statements and argument that Plaintiff's Complaint lacks

14

merit. On March 31, 2008, Defendant filed a Response to Motion to Withdraw as Counsel of Record (#48). Defendant stated that it objected to the Motion but also acknowledged that there were irreconcilable differences between Defendant and its counsel. Defendant further stated that it would not be easy to find another adequate attorney in this situation and that Defendant had not been able to find another attorney.

On April 1, 2008, Judge Bernthal held a status conference. Judge Bernthal discussed the status of the case and also discussed the issue of filing documents not signed by counsel of record. Judge Bernthal stated that, as to future filings, the court would strike documents not signed in accordance with Rule 11 of the Federal Rules of Civil Procedure.

ANALYSIS

I. MOTION TO DISMISS

On April 3, 2008, Judge Bernthal filed his Report and Recommendation (#49). Judge Bernthal recommended granting Defendant's Motion to Dismiss (#19) based upon his conclusion that this court does not have personal jurisdiction over Defendant. Judge Bernthal considered, and accepted, the statements contained in Hsiao's Declaration and Hsiao's Second Declaration that related to the issue of personal jurisdiction. Judge Bernthal noted that Plaintiff had filed motions to strike the declarations, but again did not address Plaintiff's argument that Defendant had admitted facts regarding the issue of personal jurisdiction by failing to file a timely response to Plaintiff's Requests for Admission of Facts. Judge Bernthal stated that Hsiao's Declarations included the following facts: (1) Defendant does not own the alleged website, never paid for it and never operated it; (2) Defendant does not have any agents, office, or mailing address in Illinois and does not pay taxes in the State of Illinois; (3) Hsiao conducted a "brief review" of Defendant's accounts and did

15

not find a physician named Dr. Cynthia Yango in Defendant's customer list; (4) Defendant has no

employees residing or working in Illinois or who routinely travel to Illinois; (5) Defendant does not

own or lease property in Illinois; (6) Defendant is not registered to do business in Illinois and has

not appointed an agent for service of process in Illinois; (7) Defendant does not pay income,

property or use taxes to the State of Illinois; (8) Defendant does not target any advertising directly

toward the States of Illinois, but does occasionally advertise in materials that may enter the State of

Illinois; (9) Defendant does not have a distributor, sales representative, or branch company in

Illinois; (10) less than one percent of the sales of Panatrex Products were shipped to the State of

Illinois "in this year;" (11) "[i]n the year of this litigation," Defendant had only one customer in

Illinois with $2,760 in yearly sales; and (12) the single customer in Illinois has continued to

purchase Panatrex Products "for years."

Judge Bernthal carefully and thoroughly set out the case law regarding personal jurisdiction.

He concluded that Plaintiff failed to meet its burden to show that this court has personal jurisdiction

over Defendant based upon either general or specific jurisdiction.  Judge Bernthal first found that

the prior litigation between the parties, including Defendant's communications directed to Plaintiff

at Plaintiff's Illinois offices regarding the prior litigation, did not provide any basis for finding

personal jurisdiction over Defendant.  Judge Bernthal also stated that Plaintiff did not provide any

information about the level of the website's interactivity and noted the lack of information relating

to Defendant's Illinois sales.

On April 15, 2008, Plaintiff filed its Objections to Report and Recommendation (#50).

Plaintiff noted that Judge Bernthal gave no apparent consideration to the admissions by Defendant

associated with personal jurisdiction.  Plaintiff pointed out that, by failing to timely respond to

16

Plaintiff's Requests for Admission of Facts, Defendant admitted that: (a) it regularly and systematically sold the Panatrex Products into the State of Illinois; (b) it engaged in the marketing of the Panatrex Products by various means, including the use of published advertisements in publications, including journals read by allergy clinicians, which journals are regularly and customarily transported into the State of Illinois for readers who are citizens of the State of Illinois; (c) it knew that its printed advertisements would be transported into the State of Illinois for use and to be read by citizens of the State of Illinois; (d) it received funds and monies from citizens of the State of Illinois from the sale of Panatrex Products on a regular and systematic basis; (e) it has regularly and systematically marketed and advertised for sale the Panatrex Products within the State of Illinois; (f) it has regularly and systematically obtained the benefits and protections of the laws of the State of Illinois; (g) the Journal is transported into the State of Illinois on a regular basis for sale and distribution to subscribers thereof; (h) it sold and caused the delivery of products manufactured by Defendant into the State of Illinois on a regular and systematic basis during calendar years 2005, 2006, and 2007; and (i) Defendant caused the publication of advertisements for Defendant's products to be made with the intent of such advertisements to be received by persons within the State of Illinois during calendar years 2005, 2006, and 2007. Plaintiff further pointed out that Defendant again admitted these matters by failing to file a proper response to Plaintiff's Motion for Partial Summary Judgment.

Plaintiff also argued that Judge Bernthal unfairly faulted Plaintiff for the lack of information regarding the website's interactivity and the lack of information regarding Defendant's Illinois sales. Plaintiff noted that Judge Bernthal did not even mention Plaintiff's repeated demands that Defendant produce this information or Defendant's "steadfast refusal to produce: (a) a single piece of paper in

response to requests for production; (b) any viable information in response to interrogatories; or (c) any testimony in response to deposition notices." Plaintiff argued that "perhaps compelling [Defendant] to respond properly to long overdue discovery would have assisted the parties and the District Court in obtaining information relevant to such matters." Plaintiff argued that this court should not countenance Defendant's conduct "much less reward such conduct by dismissing the present litigation." Plaintiff further pointed out that the Report and Recommendation mischaracterized the evidence presented by Plaintiff regarding Defendant's communications with Plaintiff in Illinois. Hein's declarations, and the attached documentation, clearly showed that Defendant engaged in telephone calls with Plaintiff and sent letters to Plaintiff's offices in Illinois related to the present litigation, not the prior litigation between the parties. In addition, Plaintiff noted that Hsiao's statements in his Declarations that less than 1% of Defendant's sales are made into the State of Illinois is called into question by Defendant's response to Interrogatories which stated that Defendant did not maintain records for sales into the State of Illinois.

On April 25, 2008, Defendant, through its attorney, filed a Response to Plaintiff's Objections (#51). Defendant argued that its activities in Illinois are insufficient to confer personal jurisdiction under the "minimum contacts" test. Defendant argued that it "did not advertise in Illinois and did not direct any action against the Plaintiff in Illinois." Defendant therefore asked this court to accept the Report and Recommendation. Defendant attached yet another Declaration signed by Hsiao which responded to, and attempted to contradict, Plaintiff's summary of Defendant's admissions regarding personal jurisdiction.

This court agrees with Plaintiff that it cannot accept the recommendation to grant Defendant's Motion to Dismiss based upon the circumstances present in this case. This court agrees

with Plaintiff that Defendant's failure to respond in a timely manner to Plaintiff's Requests for Admission of Facts results in the admission of all the facts included in the requests, including important facts regarding personal jurisdiction.  Rule 36 provides:

> A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.  A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.

Fed R. Civ. P. 36(a)(3).  Rule 36(a) "clearly provides that a party must answer each matter for which an admission is requested within 30 days or the matter is deemed admitted."  United States v. Kasuboski, 834 F.2d 1345, 1349 (7th Cir. 1987).  Rule 36(a) is self-executing, meaning that no court intervention is necessary for an admission to be established, and failure to timely respond results in the admission of the matters raised in a request for admissions. See Matthews v. Homecoming Fin. Network, 2006 WL 2088195, at *1-2 (N.D. Ill. 2006).  A matter that is deemed admitted is "conclusively established."  Meyer v. Mitchell, 2007 WL 2068478, at *4 (N.D. Ind. 2007), citing Fed. R. Civ. P. 36(b).

As previously noted, the parties agreed, and the Discovery Order stated, that the parties had 45 days to respond to written discovery.  However, even though Defendant had more time to respond than provided for by Rule 36(a), it is undisputed that Defendant did not timely respond to Plaintiff's Requests for Admission of Facts.  Therefore, all of the factual statements set out by Plaintiff, including the factual statements related to personal jurisdiction, were admitted by Defendant.

This court recognizes that Defendant did include a request to withdraw its admissions in its

19

response to Plaintiff's Motion for Partial Summary Judgment. However, the only proper vehicle for attempting to withdraw admissions made under these circumstances is a motion under Rule 36(b) to withdraw admissions, and Defendant did not file such a motion. See Fed. R. Civ. P. 36(b); Kasuboski, 834 F.2d at 1350. Moreover, this court agrees with Plaintiff that Defendant has not presented an adequate basis for withdrawing its admissions. Under Rule 36(b), a court may permit a party to withdraw default admissions if several requirements are met: (1) the presentation of the merits of the action will be subserved by recision or withdrawal; (2) the party who obtained the default admissions fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits; and (3) the court, in its discretion, permits the recision or withdrawal. Matthews, 2006 WL 2088194, at *2; citing Fed. R. Civ. P. 36(b); Kasuboski, 834 F.2d at 1350 n.7.

In this case, Defendant has not provided this court with an adequate explanation as to its failure to file a timely response to Plaintiff's Requests for Admission of Facts. Also, it is obvious that Plaintiff has relied on Defendant's admissions and will be severely prejudiced if Defendant is allowed to withdraw its admissions, especially considering Defendant's almost complete failure to provide Plaintiff with discovery. Therefore, this court, in its discretion, declines to allow Defendant to withdraw its admissions and will consider Defendant's Motion to Dismiss in light of Defendant's admissions. This court further notes that a party cannot refute default admissions with affidavits. See Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1109 (7th Cir. 2004). Therefore, this court will not consider Hsiao's late-filed Declarations which attempt to refute Defendant's admissions.

Once a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the

burden of demonstrating the existence of jurisdiction. <u>Jennings v. AC Hydraulic A/S</u>, 383 F.3d 546,

548 (7th Cir. 2004); <u>Purdue Research Found. v. Sanofi-Synthelabo, S.A.</u>, 338 F.3d 773, 782 (7th Cir.

2003).  However, when the district court rules on the defendant's motion based upon the submission

of written materials, without the benefit of an evidentiary hearing, a plaintiff must only make a prima

facie showing that this court has personal jurisdiction over the defendant to withstand a Rule

12(b)(2) motion.  <u>Purdue Research Found.</u>, 338 F.3d at 782.  In evaluating whether the prima facie

standard has been satisfied, all disputes concerning relevant facts must be resolved in the plaintiff's

favor.  <u>Purdue Research Found.</u>, 338 F.3d at 782; <u>Hyatt Int'l Corp. v. Coco</u>, 302 F.3d 707, 713 (7th

Cir. 2002).  Moreover, this court will consider Defendant's admissions regarding facts relevant to

the issue of personal jurisdiction.  Furthermore, this court may draw negative inferences from

Defendant's failure to properly respond to discovery requests.  <u>See</u> <u>Chicago Architecture Found. v.</u>

<u>Domain Magic, LLC</u>, 2007 WL 3046124, at *7 (N.D. Ill. 2007).

        Jurisdiction exercised on the basis of a federal statute that does not authorize nationwide

service of process requires a federal district court to determine if a court of the state in which it sits

would have personal jurisdiction.  <u>See</u> <u>ISI Int'l, Inc. v. Borden Ladner Gervais LLP</u>, 256 F.3d 548,

550 (7th Cir. 2001).  The federal statute at issue here, the Lanham Act, does not authorize nationwide

service of process.  <u>See</u> <u>ISI Int'l, Inc.</u>, 256 F.3d at 550.  Therefore, this court has jurisdiction only

if an Illinois state court would have such jurisdiction.  <u>See</u> <u>Softee Mfg., LLC v. Mazner</u>, 2003 WL

23521295, at *2 (N.D. Ill. 2003).  The Illinois long-arm statute contains a "catch-all" provision

which allows Illinois state courts to assert personal jurisdiction to the maximum extent permitted

by the Illinois and United States Constitutions.  <u>Int'l Molding Mach. Co. v. St. Louis Conveyor Co.</u>,

2002 WL 1838130, at *2 (N.D. Ill. 2002), <u>citing</u> 735 Ill. Comp. Stat. 5/2-209(c).  Thus, personal

jurisdiction under Illinois law is coextensive with federal due process requirements. Int'l Molding Mach. Co., 2002 WL 1838130, at *2; see also Hyatt, 302 F.3d at 715 ("there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction").

The federal test for determining personal jurisdiction begins with the now familiar requirement that the defendant must have "purposefully established minimum contacts within the forum state," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985), "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945). This "minimum contacts" analysis requires the plaintiff to demonstrate that the defendant "should reasonably anticipate being haled into court [in the forum state]," because the defendant has purposefully availed itself of the privilege of conducting activities there. Burger King, 471 U.S. at 474-75, quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Personal jurisdiction comes in two forms, "general" and "specific" jurisdiction. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8, n.9 (1984); Jennings, 383 F.3d at 549. General jurisdiction is based upon contacts of a continuous and systematic nature. Helicopteras, 466 U.S. at 416. Specific jurisdiction refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." RAR, Inc. v. Turner Diesel Ltd., 107 F.3d 1272, 1277 (7th Cir. 1997), quoting Helicopteros, 466 U.S. at 414 n.8. A court may exercise specific jurisdiction over a defendant if the defendant "purposefully established minimum contacts within the forum State" and those contacts "make personal jurisdiction reasonable and fair under the circumstances." RAR, Inc., 107 F.3d at 1277, quoting Burger King, 471 U.S. at 476-77.

Plaintiff has argued that, based on Defendant's repeated admissions regarding its regular and systematic contacts with Illinois for a period of years, Defendant is subject to this court's exercise of general jurisdiction.  Plaintiff has also argued that there is specific jurisdiction under a stream of commerce theory.  In addition, Plaintiff argued that personal jurisdiction over Defendant is proper under the "effects doctrine."  This court concludes that jurisdiction over Defendant is proper under the effects doctrine.  Therefore, this court does not need to determine whether jurisdiction is also proper under Plaintiff's other theories.

Under the "effects doctrine," specific personal jurisdiction over a nonresident defendant is proper when the defendant's intentional tortious actions aimed at the forum state cause harm to a plaintiff in the forum state, and the defendant knows such harm is likely to be suffered.  Calder v. Jones, 465 U.S. 783, 788-90 (1984); Brunswick Bowling & Billiards Corp. v. Pool Tables Plus, Inc., 2005 WL 396304, at *3 (N.D. Ill. 2005).  The Seventh Circuit has interpreted the effects doctrine broadly.  See Janmark, Inc. v. Reidy, 132 F.3d 1200, 1202 (7th Cir. 1997); Indianapolis Colts, Inc. v. Metro. Baltimore Football Club, 34 F.3d 410, 411-12 (7th Cir. 1994); Brunswick, 2005 WL 396304, at *3.  In Janmark, the Seventh Circuit held that "the state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor," even if all other relevant conduct took place outside the forum state.  Janmark, 132 F.3d at 1202; Spank! Music & Sound Design, Inc. v. Hanke, 2005 WL 300290, at *3 (N.D. Ill. 2005); see also Brunswick, 2005 WL 396304, at *3.  "This is because the location of the tortious injury is critical to understanding where the tort occurred."  Riddell, Inc. v. Monica, 2003 WL 21799935, at *3 (N.D. Ill. 2003), citing Janmark, 132 F.3d at 1202.

In Janmark, the plaintiff, a seller of mini shopping carts, filed a complaint seeking a

declaratory judgment that it had not infringed a competitor's copyright. <u>Janmark</u>, 132 F.3d at 1201. The plaintiff also asserted a claim for tortious interference with prospective economic advantage based upon a false claim of copyright infringement. <u>Janmark</u>, 132 F.3d at 1201-02. The plaintiff alleged that the California defendants placed a telephone call to one of the plaintiff's customers in New Jersey which caused the customer to cease buying shopping carts from the plaintiff. <u>Janmark</u>, 132 F.3d at 1202. The district court concluded that it lacked personal jurisdiction over the California defendants. <u>See</u> <u>Janmark</u>, 132 F.3d at 1201. Reversing, the Seventh Circuit reasoned that, because without an injury there is no tort and because a wrong does not become a tort until an injury has occurred, the location of the injury is vital to understanding where the tort occurred. <u>Janmark</u>, 132 F.3d at 1202. The Seventh Circuit concluded that, because the injury took place in Illinois, which resulted when the customer who received the defendant's phone call cancelled its order with the plaintiff, the tort occurred in Illinois and was thus actionable in Illinois. <u>Janmark</u>, 132 F.3d at 1202.

Following <u>Janmark</u>, many district courts in the Seventh Circuit have concluded that injury in Illinois is sufficient to confer personal jurisdiction on out-of-state defendants. <u>See</u>, <u>e.g.</u>, <u>Medallion Prods., Inc. v. H.C.T.V., Inc.</u>, 2007 WL 3085913, at *7 (N.D. Ill. 2007) (court had personal jurisdiction over defendants where the defendants' alleged tortious activities had direct effects on companies located in Illinois); <u>Varitalk, LLC v. Lahoti</u>, 2007 WL 1576127, at *6 (N.D. Ill. 2007) (court had personal jurisdiction over California defendant in case alleging unfair competition based on confusion caused by internet website where the plaintiff was injured in Illinois); <u>Allied Van Lines, Inc. v. Gulf Shores Moving & Storage, Inc.</u>, 2005 WL 418032, at *3 (N.D. Ill. 2005) (court had personal jurisdiction over defendants because the plaintiff alleged that the defendants committed a tort–conversion–that caused injury in Illinois); <u>Brunswick</u>, 2005 WL

24

396304, at *3 (court had personal jurisdiction over North Carolina defendant where the plaintiff alleged tortious actions, including a claim under the Lanham Act, which resulted in injury felt by the plaintiff in Illinois); Halim v. The Great Gatsby's Auction Gallery, Inc., 2004 WL 434191, at *4 (N.D. Ill. 2004), aff'd, 516 F.3d 557 (7th Cir. 2008) (court had personal jurisdiction over the defendant because the injury that allegedly resulted from the defendant's misrepresentation torts occurred in Illinois); Int'l Molding Mach. Co., 2002 WL 1838130, at *4-5 (court had personal jurisdiction under the effects doctrine where injury suffered by the plaintiff due to the alleged misappropriation of trade secrets occurred in Illinois); Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc., 88 F. Supp. 2d 914, 920 (C.D. Ill. 2000) (court had personal jurisdiction over New York defendant where the Illinois plaintiff alleged trademark infringement and unfair competition causing injury in Illinois).

In this case, Defendant has admitted that, during the calendar years 2005, 2006 and 2007, it caused the publication of advertisements for the Panatrex Products to be made with the intent that such advertisements would be received by persons within the State of Illinois. It is also essentially undisputed that at least one former customer of Plaintiff has purchased products from Defendant rather than Plaintiff during those years. Plaintiff has alleged that, because Defendant's advertisements are misleading and likely to cause confusion, it has suffered substantial and irreparable injury, which injury has obviously occurred in Illinois. Moreover, based upon the prior litigation between these parties, this court concludes that Defendant knew Plaintiff was located in Illinois and would be harmed by its conduct. See Medallion Prods., 2007 WL 3085913, at *7. Under these circumstances, it was clearly foreseeable that Defendant would be required to answer for its actions in Illinois. See Medallion Prods., 2007 WL 3085913, at *7; Brunswick, 2005 WL

396304, at *3.

This court recognizes that the "effects doctrine" does not eliminate the need for the minimum contacts test; personal jurisdiction must still comport with due process as required by the Fourteenth Amendment.  See Medallion Prods., 2007 WL 3085913, at *6.  This court concludes, however, that Defendant's admissions regarding contacts with Illinois, including advertising in Illinois and sales in Illinois, establish that Defendant has sufficient minimum contacts so that this court may constitutionally exercise personal jurisdiction over Defendant.  See Brunswick, 2005 WL 396304, at *3.  Moreover, Illinois has an interest in adjudicating this case because Plaintiff is an Illinois company and Defendant's alleged tortious activity caused injury in Illinois.  See Varitalk, LLC, 2007 WL 1576127, at *7; Brunswick, 2005 WL 396304, at *3.

For the reasons stated, this court concludes that it is appropriate for this court to exercise personal jurisdiction over Defendant.  Therefore, Defendant's Motion to Dismiss cannot be granted based on lack of personal jurisdiction.

In its Memorandum in Support of its Motion to Dismiss, Defendant also argued that the case should be dismissed based upon improper venue "or at least transferred based on the doctrine of forum non conveniens."   In addition, Defendant argued that Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted.  Because Judge Bernthal recommended dismissal based upon lack of personal jurisdiction, he did not reach these issues.

In its Response to the Motion to Dismiss, Plaintiff argued that, because Defendant, a corporation, is subject to this court's exercise of personal jurisdiction, venue is proper under 28 U.S.C. § 1391(c).  This court agrees.  See Janmark, 132 F.3d at 1203 ("a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal

jurisdiction at the time the action is commenced"). This court notes that Defendant briefly argued that the case should be transferred because California would be a more convenient forum. In its Response, Plaintiff pointed out that Defendant provided no support for this "naked" request. This court concludes that it does not need to discuss this argument because Defendant did not move for transfer of venue under 28 U.S.C. § 1404(a). See Varitalk, LLC, 2007 WL 1576127, at *7.

In arguing that Plaintiff's Complaint should be dismissed for failure to state a claim, Defendant mainly argued that Plaintiff's allegations lack merit and relied, in part, on the statements included in the unsworn Declaration of Chin Chao Chiu, which has been stricken. This court finds that none of Defendant's arguments support dismissal of this case under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

For all of the reasons stated, Defendant's Motion to Dismiss (#19) is DENIED.

## II. MOTION FOR PARTIAL SUMMARY JUDGMENT

In its Motion for Partial Summary Judgment (#29), Plaintiff argued that Defendant failed to respond to Plaintiff's Requests for Admission of Facts, resulting in the admission of those facts. Plaintiff attached a copy of the Requests for Admission of Facts, which was served on Defendant on November 5, 2007, and the affidavit of one of its attorneys, James E. Peckert, stating that no response had been received as of January 21, 2008. Plaintiff contended that, based upon the admissions made by Defendant, Plaintiff was entitled to summary judgment as to liability on its Lanham Act claim, its claim under the Illinois Uniform Deceptive Trade Practices Act, and its claim under the Illinois Consumer Fraud and Deceptive Business Practices Act.

In its brief Response, Defendant did not respond to Plaintiff's detailed and lengthy Statement of Undisputed Facts. Defendant argued that there were genuine issues of material fact and asked

to be allowed to withdraw its admissions.

This court has already concluded that Defendant has not shown that it should be allowed to withdraw its admissions, both because it did not file a Motion to Withdraw pursuant to Rule 36(b) and because Plaintiff would be severely prejudiced by allowing Defendant to withdraw its admissions. Therefore, Defendant has admitted all of the facts included in Plaintiff's Requests for Admission of Facts.

"Admissions made under Rule 36, even default admissions, can serve as the factual predicate for summary judgment." Kasuboski, 834 F.2d at 1350; Meyer, 2007 WL 2068478, at *4. "[A] party cannot attack issues of fact established in admissions by resisting a motion for summary judgment." Kasuboski, 834 F.2d at 1350. In addition, as noted previously, affidavits cannot be used to refute default admissions. Koszola, 395 F.3d at 1109; Kasuboski, 834 F.2d at 1350. "When a request for admissions admits liability, a defendant cannot subsequently deny liability on the basis of evidence that the admission was mistaken." Meyer, 2007 WL 2068478, at *4, citing Murrey v. United States, 73 F.3d 1448, 1455 (7th Cir. 1996). "A judicial admission trumps evidence." Meyer, 2007 WL 2068478, at *4, quoting Murrey, 73 F.3d at 1455. Therefore, "[s]ummary judgment is properly granted against the party who makes no response to a request to admit as to undisputed material facts supporting such a judgment." Sanchez v. Ciolli, 2007 WL 2563940, at *8 (C.D. Ill. 2007); see also Meyer, 2007 WL 2068478, at *4-5.

Moreover, when the nonmovant does not respond to the movant's statement of facts in support of a motion for summary judgment, the nonmovant concedes the movant's version of the facts. Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir. 1994); Agent v. Sears Logistic Servs., Inc., 2008 WL 1821522, at *4 (C.D. Ill. 2008). However, it remains "the movant's

28

burden to demonstrate that no genuine issue of material fact exists and that he is entitled to summary judgment as a matter of law." Doe v. Cunningham, 30 F.3d 879, 883 (7th Cir. 1994). Accordingly, the district court must make the further finding that, given the undisputed facts, summary judgment is proper as a matter of law. LaSalle Bank Lake View v. Seguban, 54 F.3d 387, 392 (7th Cir. 1995); Sanchez, 2007 WL 2563940, at *8. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis added); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In this case, Plaintiff has set out a lengthy Statement of Undisputed Facts based upon Defendant's admissions, which have been further conceded by Defendant by failing to respond to the Statement of Undisputed Facts. Based upon these undisputed facts, this court agrees with Plaintiff that it has shown that it is entitled to judgment as to liability on its claims against Defendant.

In Count I, Plaintiff alleged that Defendant's conduct violated section 43(a) of the Lanham Act. Section 43(a) of the Lanham Act provides, in relevant part:

> (1)  Any person who, on or in connection with any goods or
> services, or any container for goods, uses in commerce any word,
> term, name, symbol, or device, or any combination thereof, or any
> false designation of origin, false or misleading description of fact, or
> false or misleading representation of fact, which–
>
> > (A) is likely to cause confusion, or to cause mistake,

or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

This court agrees with Plaintiff that, based upon the undisputed facts here, Plaintiff has shown that Defendant violated the Lanham Act because it has, in connection with the Panatrex Products, used in commerce false and misleading descriptions of fact or false and misleading representations of fact, which: (a) in commercial advertising or promotion, misrepresents the nature, characteristics or qualities of the Panatrex Products; or (b) is likely to cause confusion or mistake, or to deceive, as to the approval (by the FDA) of the Panatrex Products.  Where, as here, the subject statement is literally false, Plaintiff does not need to show actual deception or a likelihood of deception.  See Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 820 (7th Cir. 1999).  Moreover, although Plaintiff has the burden of showing that Defendant's advertisements contain a false statement, see Hot Wax, Inc., 191 F.3d at 819, in the present case, this has been proven conclusively by Defendant's admissions.

30

This court finds that Defendant has admitted making numerous and repeated statements about the Panatrex Products which were false when made, and known by Defendant to have been false when made, all in an effort to increase the sales of the Panatrex Products in interstate commerce. This court further finds that Defendant's admission that it included false statements in its advertisements and marketing is evidence that Defendant believed that such statements would convince (or, in reality, confuse) customers to purchase the Panatrex Products. Therefore, Plaintiff has established that Defendant violated section 43(a) of the Lanham Act and Plaintiff is entitled to summary judgment as to liability on this claim.

In Count II, Plaintiff alleged that Defendant violated the Illinois Uniform Deceptive Trade Practices Act. Section 2(a) of the Illinois Uniform Deceptive Trade Practices Act provides, in relevant part:

> A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:
>
> . . .
>
> (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of the goods or services;
>
> (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with of certification by another;
>
> . . .
>
> (5) represents that goods or services have sponsorship,

approval, characteristics, ingredients, uses, benefits, or quantities that

they do not have . . . ;

. . .

(7) represents that goods or services are of a particular

standard, quality, or grade or that goods are a particular style or

model, if they are of another;

(8) disparages the goods, services, or business of another by

false or misleading representation of fact;

(9) advertises goods or services with intent not to sell them as

advertised;

. . .

(12) engages in any other conduct which similarly creates a

likelihood of confusion or of misunderstanding.

815 Ill. Comp. Stat. 510/2(a) (West 2006).

In this case, Defendant has admitted that, in the course of its business, it falsely represented that the Panatrex Products possessed approval from the FDA which was, in fact, lacking. Defendant further represented that the Panatrex Products possessed qualities and benefits which were, in reality, lacking. This court agrees with Plaintiff that these admitted facts are sufficient to establish liability under the Act. Therefore, Plaintiff is entitled to summary judgment as to liability on this claim.

In Count III, Plaintiff alleged that Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act. Section 2 of the Illinois Consumer Fraud and Deceptive Business

32

Practices Act provides, in relevant part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" . . ., in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 Ill. Comp. Stat. 505/2 (West 2006).  This court agrees with Plaintiff that, because the admitted facts show that Defendant violated the Uniform Deceptive Trade Practices Act, Defendant has also violated this Act.  Accordingly, Plaintiff is entitled to summary judgment as to liability on this claim.

For all of the reasons stated, Plaintiff is entitled to summary judgment as to liability on Counts I, II, and III of its Complaint.  Plaintiff's Motion for Partial Summary Judgment (#29) is GRANTED.

### III.  MOTIONS TO STRIKE

Plaintiff filed a Motion to Strike (#37) asking this court to strike Defendant's Response to Plaintiff's Motion for Partial Summary Judgment.  Plaintiff is correct that Defendant's Response did not comply with Rule 7.1(D) of the Local Rules of the Central District of Illinois.  However, this court considered Defendant's Response in ruling on, and granting, Plaintiff's Motion for Partial

Summary Judgment.  Therefore, Plaintiff's Motion to Strike (#37) is DENIED.

Plaintiff also filed a Motion to Strike Defendant's Response to Plaintiff's Motion to Compel and Request for Sanctions (#46).  This court agrees that Defendant's Response is essentially "unintelligible."  Accordingly, Plaintiff's Motion to Strike (#46) is GRANTED.

This court also notes that Defendant filed a Motion for Extension of Time (#43) seeking additional time to file a Response to Plaintiff's Motion to Compel and Request for Sanctions and to file a Response to Plaintiff's Motion to Strike.  No ruling was made on the Motion, and Defendant subsequently filed a response to the Motion to Compel and Request for Sanctions.  This court therefore concludes that the Motion for Extension of Time (#43) is MOOT.

## IV.  MOTION TO COMPEL AND REQUEST FOR SANCTIONS

In this Motion, Plaintiff pointed out Defendant's almost complete failure to comply with discovery requests in this case.  Plaintiff also stated that it had attempted to confer with Defendant's counsel regarding the discovery problems, with no satisfactory resolution.  This court concludes that Plaintiff has shown that Defendant has failed to comply with discovery requests so that sanctions are warranted under Rule 37 of the Federal Rules of Civil Procedure.  This court further concludes that, although summary judgment as to liability has been entered in this case, discovery related to the issues of Plaintiff's recovery and damages remains necessary.  Plaintiff is therefore entitled to an order compelling compliance with its discovery requests.

Plaintiff's Motion to Compel and Request for Sanctions (#39) is therefore GRANTED.  Defendant is hereby ordered to respond fully and completely to the Interrogatories and Requests for Production served on it, in compliance with the Federal Rules of Civil Procedure, within 30 days of the date of this Opinion.  Defendant is also ordered to produce for deposition corporate

representatives who can provide information regarding Defendant's sales and other matters related to recovery and damages within 30 days of the date of this Opinion. Plaintiff is allowed 30 days to submit an affidavit documenting the attorney's fees and costs Plaintiff incurred as a result of Defendant's failure to respond to written discovery in a proper and timely manner. Defendant will have 14 days to file objections to Plaintiff's request for attorney's fees and costs.

### V.  MOTION TO WITHDRAW AS COUNSEL OF RECORD

Defendant objected to its attorney's Motion to Withdraw but also acknowledged that there were irreconcilable differences between Defendant and its counsel. Defendant stated that it objected because it would not be easy to find another adequate attorney in this situation and because Defendant had not been able to find another attorney. Because there is no dispute that there are irreconcilable differences between Defendant and its counsel, Defendant's counsel's Motion to Withdraw as Counsel of Record (#41) is GRANTED. This court advises Defendant that it will need to obtain new counsel to represent it in this case because a corporation must be represented by an attorney.

 IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion to Dismiss (#19) is DENIED.

(2) Plaintiff's Motion for Partial Summary Judgment (#29) is GRANTED.

(3) Plaintiff's Motion to Strike (#37) is DENIED.

(4) Plaintiff's Motion to Compel and Request for Sanctions (#39) is GRANTED. Defendant is hereby ordered to respond fully and completely to the Interrogatories and Requests for Production served on it, in compliance with the Federal Rules of Civil Procedure, within 30 days of the date of this Opinion. Defendant is also ordered to produce for deposition corporate representatives who can

provide information regarding Defendant's sales and other matters related to recovery and damages within 30 days of the date of this Opinion.  Plaintiff is allowed 30 days to submit an affidavit documenting the attorney's fees and costs Plaintiff incurred as a result of Defendant's failure to respond to written discovery in a proper and timely manner.  Defendant will have 14 days to file objections to Plaintiff's request for attorney's fees and costs.

(5) Defendant's Counsel's Motion to Withdraw as Counsel of Record (#41) is GRANTED.

(6) Defendant's Motion for Extension of Time (#43) is MOOT.

(7) Plaintiff's Motion to Strike (#46) is GRANTED.

(8) Defendant is advised that it must obtain counsel to represent it in this litigation.

(9) This case remains scheduled for a final pretrial conference on August 8, 2008, at 11:00 a.m. and for a bench trial on August 25, 2008, at 9:00 a.m.  The bench trial will be held solely on the issue of the proper and appropriate remedy to be awarded to Plaintiff.

ENTERED this 29th day of May, 2008

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE