**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| **LINCOLN DIAGNOSTICS, INC.**, an Illinois corporation, ) ) ) **Plaintiff**, ) v. ) **PANATREX, INC.**, a California corporation, ) ) **Defendant.** ) | Case No. 07-CV-2077 |

## OPINION

This case is before the court for ruling on various pending motions. This court has carefully considered the arguments of the parties and the documents filed by the parties. Following this court's careful and thorough consideration, this court rules as follows: (1) Plaintiff's Motions for Sanctions (#68, #73) are GRANTED; and (2) Plaintiff's Motion for Order to Bar Contradictions to Deposition (#104) is GRANTED. Plaintiff's Motion for Attorney Fees (#114) and Motion in Limine (#115) remain pending. This case remains scheduled for a bench trial on damages scheduled to commence on March 23, 2009, at 9:30 a.m.

## FACTS

This case has had a lengthy and tortured history in this court. The record shows that Defendant, through its president, Dr. Ray L. Hsiao, has made every effort to avoid providing information to Plaintiff. This was apparent throughout the deposition of Dr. Hsiao taken on August 25, 2008. At one point, Dr. Hsiao specifically stated that he had information which had been requested by Plaintiff but was not going to provide it to Plaintiff. It is also clear from reading the deposition that little or no effort was made by Defendant to find some of the documents responsive to Plaintiff's Requests for Production of Documents.

The basis for Plaintiff's requests for sanctions and for attorney fees is the Opinion (#52) entered by this court on May 29, 2008. In the Opinion, this court thoroughly detailed Defendant's failure to provide any documents in response to Plaintiff's Requests for Production, which were served on Defendant on November 5, 2007. This court also recounted the fact that Defendant's purported Response to Interrogatories, filed almost two months late, was deficient in numerous respects. This court further recounted that Defendant refused to make any of the corporate representatives Plaintiff sought to depose available for depositions. In addition, this court concluded that Defendant's failure to respond in a timely manner to Plaintiff's Request for Admission of Facts resulted in the admission of all the facts included in the Request. This court also noted that Defendant, in its two-page Response to Plaintiff's Motion for Partial Summary Judgment, did not specifically respond to any of the Undisputed Material Facts listed by Plaintiff in its Motion, so that Defendant conceded Plaintiff's version of the facts. Based upon Defendant's admissions, this court granted Plaintiff's Motion for Partial Summary Judgment. This court found that Plaintiff was entitled to summary judgment on the issue of liability. This court stated that a bench trial would be held in this case solely on the issue of the proper and appropriate remedy to be awarded to Plaintiff.

In its Opinion, this court also granted Plaintiff's Motion to Compel and Request for Sanctions (#39) based upon the finding that Plaintiff had shown that Defendant had failed to comply with discovery requests so that sanctions were warranted under Rule 37 of the Federal Rules of Civil Procedure. This court ordered, in clear and simple language: (1) that Defendant was to respond fully and completely to the Interrogatories and Requests for Production served on it, in compliance with the Federal Rules of Civil Procedure, within 30 days of the date of this court's Opinion; and (2) that Defendant was to produce for deposition corporate representatives who could provide information

regarding Defendant's sales and other matters related to recovery and damages within 30 days of the date of this court's Opinion. This court allowed Plaintiff 30 days to submit an affidavit documenting the attorney fees and costs it incurred as a result of Defendant's failure to respond to written discovery in a proper and timely manner. This court also granted Defendant's counsel's Motion to Withdraw as Counsel because both Defendant's attorney and Defendant agreed that there were irreconcilable differences between counsel and Defendant.

On June 9, 2008, in compliance with this court's Opinion, Plaintiff filed an affidavit stating that it had incurred $2,242.67 in attorney fees and costs on June 9, 2008.[1] On June 23, 2008, Attorney Paul Adami filed an entry of appearance (#55) on behalf of Defendant. Defendant, through Attorney Adami, also filed a Motion to Reconsider the Opinion granting partial summary judgment (#57). Defendant argued that its failure to timely respond to written discovery and Plaintiff's Request for Admission of Facts was attributable to Defendant's former attorney. On July 21, 2008, this court entered an Opinion (#66) and denied the Motion to Reconsider. This court pointed out that the applicable case law provided that "attorney inattentiveness is not excusable, no matter what the resulting consequences the attorney's somnolent behavior may have on a litigant." This court further noted that Defendant is a "business firm, not a hapless individual, and it has to take responsibility for the actions of its agents, including the lawyers whom it hires."

On June 30, 2008, Defendant filed a Motion for Protective Order (#59) and a Memorandum in Support (#60). Defendant sought an order allowing Dr. Hsiao to appear by telephone for his deposition as corporate representative of Defendant. Plaintiff opposed the Motion for Protective

---

[1] Defendant did not object to the reasonableness of the attorney fees and costs sought by Plaintiff. Accordingly, on July 21, 2008, this court entered an Order (#67) ordering Defendant to pay Plaintiff $2,242.67 for attorney fees and costs.

Order (#65).  On July 21, 2008, Plaintiff filed a Motion for Sanctions (#68) and Memorandum in Support (#69).  Plaintiff stated that, after this court's Opinion ordered Defendant to fully respond to Plaintiff's written discovery requests within 30 days, Defendant had not complied.  Plaintiff noted that Defendant's change in legal counsel had done little to rectify the improper discovery efforts by Defendant "to avoid producing any relevant information or documents whatsoever."  Plaintiff set out in detail the shortcomings of Defendant's most recent purported responses to Plaintiff's Interrogatories and Requests for Production.  For example, Plaintiff pointed out that, in Interrogatory 17, Plaintiff asked Defendant to set forth all facts in support of the claim that the "Quick-Test[®] applicator[,] equipped with central stopper[,] can limit the puncture depth within 0.3-0.4 mm" (which claim was presented on the web-site).  In its response to the Interrogatory, Defendant denied that it made such a claim.  Plaintiff attached a copy of the package insert for Defendant's products which included the following statement:

> we have designed a new test device with a stopper according to the needs of allergists.  The depth of which it penetrates the skin properly is limited to 0.3 mm, increasing the reproducible accuracy.

Plaintiff argued that "it is inappropriate for Panatrex to deny ever having made such a claim when said claim exists in the package insert supplied by Panatrex with the Panatrex Products."  Plaintiff also stated that, in response to Plaintiff's Requests for Production, Defendant still had failed to produce any documents or materials other than the first page of Defendant's purported federal income tax returns for specified years, some self-created tabular information and copies of limited studies.  Plaintiff stated that Defendant still had not provided the information Plaintiff had requested regarding Defendant's revenues, gross margins and profits associated with Defendant's sales of the

Panatrex Products for calendar years 2001 through 2007.

On July 29, 2008, Defendant filed a Second Motion for Protective Order (#71) and Memorandum in Support (#72). Defendant stated that Plaintiff's request for sale documents was a request for Defendant's customer list, which is a trade secret. On July 30, 2008, Defendant filed Dr. Hsiao's affidavit (#74) in support of the Motion.

Also on July 30, 2008, Plaintiff filed its Second Motion for Sanctions (#73). Plaintiff complained about Defendant's most recent behavior, including the fact that Defendant had not paid Plaintiff the attorney fees and costs ordered by this court. On July 30, 2008, Defendant filed its Response to Plaintiff's First Motion for Sanctions (#75). Defendant noted that Defendant had recently obtained new counsel and argued that sanctions were not warranted. On July 31, 2008, Plaintiff filed a Memorandum in Opposition (#76) to Defendant's Second Motion for Protective Order.

On July 31, 2008, a hearing regarding Defendant's Motion for Protective Order (#59) was held before Magistrate Judge David G. Bernthal. After hearing argument, Judge Bernthal denied Defendant's Motion for Protective Order (#59). On August 4, 2008, Defendant filed its Response to Plaintiff's Second Motion for Sanctions (#79). Defendant stated that it mailed a check to Plaintiff's counsel for $2,242.67 on July 29, 2008. Defendant again argued that sanctions were not warranted.

On August 5, 2008, a hearing was held before this court. This court denied Defendant's Second Motion for Protective Order (#71). This court concluded that, by failing to respond to written discovery within the original time allowed, Defendant waived any objections to Plaintiff's requests. This court therefore directed Defendant to produce documents in response to Plaintiff's

Requests for Production #26 pertaining to sales of Defendant's products. This court then scheduled the deposition of Dr. Hsiao, as corporate representative of Defendant, for August 25, 2008, at 10:00 a.m. at the U.S. Courthouse.

On August 25, 2008, Dr. Hsaio appeared for his deposition and the deposition was completed on that date. This court then held a hearing and various matters and problems, including Dr. Hsiao's attempts to file material with the court and send correspondence directly to the court, were discussed. This court reminded Dr. Hsaio that it was inappropriate for someone represented by counsel to contact the court and also reminded him that it was the corporation which is a party to this case, not Dr. Hsiao, the individual. This court also stated:

> Well, I'll make it clear. Please don't send any documents to the Court, to the Clerk of the Court, or to Mr. Peckert [Plaintiff's attorney]; and I'm sure you've been given that advice. But I'm telling Dr. Hsiao that on the record.

On September 10, 2008, this court entered an Opinion (#91) in this case. This court stated that, despite this court's very clear and direct admonition to Dr. Hsiao, he faxed four documents to the clerk's office in Urbana on September 9, 2008. This court further stated that corporations must be represented by counsel, so Dr. Hsiao could not represent Defendant and file documents on its behalf. This court then ordered that documents #87, #88, #89, and #90 were stricken. On September 16, 2008, this court entered another Opinion (#93). This court granted Plaintiff's Motion for Reimbursement of Reasonable Expenses, Including Attorney's Fees (#80). This court concluded that Plaintiff was entitled to recover the expenses it incurred in responding to Defendant's Motions for Protective Order. This court concluded that the motions were not "substantially justified" so that

sanctions were warranted under Rule 37(a)(5)(B) of the Federal Rules of Civil Procedure. In doing so, this court specifically found that Defendant had exhibited a pervasive course of conduct that could only be described as calculated to frustrate legitimate discovery which was continued when Defendant filed Motions for Protective Order instead of complying with this court's clear order of May 29, 2008. This court also concluded that materials sent by Dr. Hsiao directly to Attorney Peckert did not need to be returned or safeguarded. This court rejected Defendant's argument that the documents were privileged and were sent "inadvertently." This court concluded that "Dr. Hsiao's complete unwillingness to comply with simple instructions and intentional defiance of those instructions must have some consequences." After Plaintiff filed an affidavit (#94) regarding the attorney fees it incurred in responding to Defendant's two motions for protective order, this court entered an Order (#97) and ordered Defendant to pay Plaintiff $2,456.25 to reimburse Plaintiff for the attorney fees it incurred in responding to Defendant's two motions for protective order.

On October 30, 2008, Plaintiff filed a Motion to Bar Contradictions to Deposition and for Sanctions (#104) and a Memorandum of Law in Support (#105). Plaintiff stated that, pursuant to this court's order, Defendant presented Dr. Hsiao as the principal corporate representative to testify in response to Plaintiff's deposition notice, with Kevin Kuo present to assist and answer questions as might be necessary. It was agreed that sworn statements by either would be deemed the testimony of Defendant. The court reporter at the August 25, 2008, deposition certified the resulting transcript on September 11, 2008. Plaintiff stated that, on October 23, 2008, Plaintiff received from Defendant an executed *errata* sheet, dated October 7, 2008. Plaintiff stated that, by means of the *errata* sheet, Defendant attempted to contradict the oral testimony provided by Dr. Hsiao on August 25, 2008. Plaintiff stated that, in a transcript consisting of 101 pages, Defendant sought to alter 35

statements made at the deposition. These attempted alterations included changing answers of "yes" to "no" and "no" to "yes" and changing names which were provided, and carefully spelled, at the deposition. Plaintiff argued that:

> By means of the *Errata* sheet, the Panatrex representative, Dr. Hsiao, presently advances an assertion which, to [Plaintiff], appears fanciful at best. Dr. Hsiao contends that this deposition testimony was false (as herein described), because (after reflection and likely participation by Panatrex's legal counsel) he seeks to contradict his oral testimony. Panatrex's contention is advanced at a time when Panatrex no longer is required to explain to [Plaintiff] the reasons Panatrex believes it can truthfully respond affirmatively and negatively to the same question.

Plaintiff asked this court to enter an order barring Defendant from altering the deposition testimony of its representative, Dr. Hsiao, and imposing sanctions.

On November 17, 2008, Defendant filed a Response in Opposition to Motion to Bar Contradictions to Deposition and for Sanctions (#109). Defendant stated that Rule 30(e) of the Federal Rules of Civil Procedure allows corrections to deposition transcripts. Defendant argued that Dr. Hsiao "is not a native English speaker so that the number of corrections is not surprising."

On November 19, 2008, this court allowed Plaintiff to file a Reply Memorandum (#110). In its Reply, Plaintiff pointed out that the "whole point of conducting the Panatrex Deposition was to obtain truthful responses to [Plaintiff's] inquiries." Plaintiff pointed out that, after Defendant's representative, Dr. Hsiao, testified that he lacked knowledge of a subject, Plaintiff terminated that

inquiry and moved on. Subsequently, Defendant altered its testimony without Plaintiff having any opportunity to question Defendant further. Plaintiff stated that it "does not know which contradictory response is true or accurate, and such was the very reason [Plaintiff] deposed Panatrex in accordance" with Rule 30(b)(6).

On December 1, 2008, Defendant filed a Supplementary Response to Plaintiff's Motion for Sanctions and Second Motion for Sanctions (#111).[2] Defendant attempted to justify its responses to written discovery and stated that, on August 8, 2008, Defendant provided "over 2,000 pages of documents." Defendant attached, as exhibits, its Response to Requests for Production, which was verified by Dr. Hsiao on June 24, 2008, its Third Amended Pre-Trial Disclosures, dated August 19, 2008, and a letter from Defendant's counsel to Plaintiff's counsel dated December 1, 2008. This court notes that, in the June 24, 2008, Response to Requests for Production, Defendant stated that it had "previously produced all known documents related to this litigation, except as stated herein." Based upon its own Supplementary Response, Defendant subsequently provided over 2,000 pages of documents related to the litigation.

On January 16, 2009, Plaintiff filed a Motion for Attorney Fees (#114).[3] Plaintiff stated that it was entitled to attorney fees under the Lanham Act, pursuant to 15 U.S.C. § 1117(a), the Illinois Uniform Deceptive Trade Practices Act, pursuant to 815 Ill. Comp. Stat. 510/3 (West 2006), and the Illinois Consumer Fraud and Deceptive Business Practices Act, pursuant to 815 Ill. Comp. Stat.

---

[2] At a status conference on November 14, 2008, this court allowed Defendant to supplement its prior Responses (#75, #79).

[3] On December 16, 2008, a status conference was held and this court directed Plaintiff to provide attorney fee information to Defendant by January 16, 2009. Plaintiff stated that the document regarding attorney fees was submitted as a "motion" rather than a "submission" in order to file it in the ECF system.

505/10a(c) (West 2006). Plaintiff attached documentation setting out the attorney fees it had incurred in this litigation. Plaintiff noted, however, that it retained the right and duty to submit evidence at trial in support of its claim for attorney fees. On February 13, 2009, Plaintiff filed a Motion in Limine (#115), and Defendant filed its Objection to Plaintiff's Request for Attorney Fees (#116). On February 17, 2009, Plaintiff filed its Response (#117) to Defendant's Objection to Attorney Fees.

## ANALYSIS

Following this recitation of the procedural history in this case, this court concludes that Defendant has amply demonstrated that, no matter who its attorney is, it will resist providing discovery and complying with this court's orders. Plaintiff has clearly demonstrated that Defendant did not comply with this court's Opinion (#52) and provide complete responses to written discovery within 30 days. The deposition of Dr. Hsiao shows that, as of August 25, 2008, Defendant still was refusing to provide requested information and that Defendant had made little or no effort to locate some of the documents requested by Plaintiff. Defendant's argument that it produced "over 2,000 pages of documents" on August 8, 2008 does not change these facts. This court notes that this production occurred more than eight months after Plaintiff requested the documents and after Defendant filed a Response, certified by Dr. Hsaio, which stated that all requested documents had previously been provided. Accordingly, Plaintiff's Motion for Sanctions (#68) and Second Motion for Sanctions (#73) are GRANTED. Defendant is hereby ordered to pay Plaintiff all of the attorney fees and costs it has incurred as a result of Defendant's failure to comply with this court's Opinion (#52). However, because Plaintiff is seeking all of its attorney fees and evidence regarding its attorney fees will be presented at the bench trial, this court will determine the amount of attorney

fees owed at the bench trial.[4]  Also, as per Plaintiff's request, this court confirms that all facts described within Plaintiff's Request for Admission of Facts are deemed admitted and that judgment as to liability has been granted in favor of Plaintiff and against Defendant.  At the bench trial on damages scheduled for March 23, 2009, Defendant will not be allowed to present any evidence relevant to the issue of liability.  Defendant also will not be allowed to present any evidence on damages which was not fully disclosed to Plaintiff in discovery.

This court further concludes, following a thorough review of the transcript of the deposition of Dr. Hsiao and the *errata* sheet prepared by Defendant, that Plaintiff's Motion to Bar Contradictions to Deposition and for Sanctions (#104) must be granted.  Rule 30(b)(6) provides, in pertinent part:

> In its notice or subpoena, a party may name as the deponent a public or private corporation . . . and must describe with particularity the matters for examination.  The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. . . . . The persons designated must testify about information known or reasonably available to the organization.

Fed. R. Civ. P. 30(b)(6).  The transcript of the Rule 30(b)(6) deposition held in this case shows that Plaintiff's attorney, Mr. Peckert made clear during the deposition that it was the deposition of

---

[4] This court notes that if Defendant is determined to be liable for all of the attorney fees sought by Plaintiff, there will be no need to differentiate the amount owed based upon Defendant's failure to comply with this court's orders.

Panatrex, Inc., and that Dr. Hsiao and Kevin Kuo were answering questions, "but whatever person answers it is on behalf of Panatrex and is the testimony of Panatrex." Defendant's attorney agreed that both witnesses were collectively witnesses pursuant to Rule 30(b)(6). Mr. Peckert also explained to Dr. Hsiao at the beginning of the deposition that if he did not understand a question, he should ask that the question be rephrased or clarified. On several subsequent occasions, Mr. Peckert explained to Dr. Hsiao that he should listen to the questions asked and make sure he understood before he provided an answer. Dr. Hsiao did ask for clarification of questions on several occasions.

During the deposition, Dr. Hsiao stated that he had a copy of an e-mail which he was not going to provide to Plaintiff. Dr. Hsiao essentially acknowledged that the e-mail should have been provided in response to Plaintiff's Requests for Production and stated that he had not produced it. There were also numerous questions that Dr. Hsaio was unable to answer. Dr. Hsiao sometimes stated that he did not know the answer to the question. The following exchange took place:

> Q. [By Mr. Peckert] Dr. Hsiao, did you review, look at any documents or pieces of paper as you prepared for your deposition today?
>
> A. [By Dr. Hsiao] No.
>
> Q. You didn't look at anything to prepare for today's deposition?
>
> A. Pardon me?
>
> Q. Did you look at anything to prepare for your deposition today?
>
> A. I just looked at this. This one. The Interrogatories and the Request for Production, just only these two.

Q. So you looked at the Interrogatories and the Response to the [Request] for Production?

A. Yes.

Q. Did you talk to anyone other than Mr. Adami about your deposition today?

A. Pardon me?

Q. Did you discuss the fact that you were going to give this deposition with anyone other than Mr. Adami?

A. No.

Q. Okay. So other than Mr. Adami, you had no discussions with anyone about your deposition, correct?

A. Pardon me.

Q. If we exclude Mr. Adami –

A. Uh-huh.

Q. – who did you discuss your deposition with? No one?

A. Yes.

Q. You didn't speak with Mr. Kuo about this deposition?

A. No. I am very tired. Plane is so long. I have no time to discuss with him.[5]

---

[5] In its Response (#109), Defendant argues that Dr. Hsiao testified only that he had not reviewed documents or discussed his deposition "today." This court agrees with Plaintiff that Dr. Hsiao's testimony, in fact, referred to any preparation, at any time, prior to the deposition.

Dr. Hsiao subsequently signed an *errata* sheet, dated October 7, 2008, which set out several pages of changes to the deposition transcript. As noted by Plaintiff, these changes included changing "no" to "yes," "yes" to "no," and changing names given, and carefully spelled, at the deposition. For example, at the deposition, Dr. Hsiao testified that the name of Defendant's sterilization company was "Sterigenics" which was spelled "S-T-E-R-I-G-E-N-I-C-S." The errata sheet stated that this answer should be changed to "IBA."

Plaintiff contends that sanctions should be imposed on Defendant for designating a corporate representative for deposition who was not prepared for the deposition and was unable to offer useful information on many subjects during the deposition. Plaintiff requested that this court bar Defendant from contradicting the deposition testimony given at the August 25, 2008, deposition and award Plaintiff the expenses and attorney fees it has incurred in bringing its Motion regarding the deposition.

Defendant is correct that Rule 30(e) of the Federal Rules of Civil Procedure does allow for changes "in form or substance" to a deposition. See Fed. R. Civ. P. 30(e)(1)(B). The Seventh Circuit has recognized this rule, but noted that "a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'" Thorn v. Sundstrand Aerospace Corp., 207 F.3d 383, 389 (7th Cir. 2000).

The real problem in this case is that Defendant has resisted providing information throughout the course of this litigation. Plaintiff originally requested a deposition of a corporate representative designated by Defendant in December 2007. Defendant refused to comply with Plaintiff's request and, on May 29, 2008, this court granted Plaintiff's motion to compel and ordered Defendant to

provide a representative for deposition within 30 days. Defendant continued to resist, and this court ultimately ordered Dr. Hsiao to appear for a deposition at the United States Courthouse, which he did on August 25, 2008. Even though the deposition took place many months after it was first requested and even though Plaintiff made clear the information it was seeking in the deposition, Dr. Hsiao was unprepared for many of the questions asked and did not provide an answer to many of the questions. Then he attempted to change 35 of the answers he did provide, leaving Plaintiff with no means to determine which was the truthful, accurate answer.

Under the circumstances here, this court finds the decision of the Third Circuit Court of Appeals in Black Horse Lane v. Dow Chem. Corp., 228 F.3d 275 (3rd Cir. 2000), instructive and persuasive. The Third Circuit recognized that courts have determined that sanctions under Rule 37(d) may be appropriately granted where a corporation designates a corporate representative for deposition under Rule 30(b)(6) who is not knowledgeable about relevant facts. Black Horse Lane, 228 F.3d at 303-04. The court in Black Horse Lane stated:

> In reality if a Rule 30(b)(6) witness is unable to give useful information he is no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it. Indeed, we believe that the purpose behind Rule 30(b)(6) undoubtedly is frustrated in the situation in which a corporate party produces a witness who is unable and/or unwilling to provide the necessary factual information on the entity's behalf. . . . . Thus, we hold that when a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), "[p]roducing an unprepared

15

witness is tantamount to a failure to appear" that is sanctionable under Rule 37(d).

Black Horse Lane, 228 F.3d at 304, quoting United States v. Taylor, 166 F.R.D. 356, 363 (M.D.N.C. 1996).  Rule 37(d) allows a court to impose various sanctions for a party's failure to comply with Rule 30(b)(6), including the preclusion of evidence.  Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co., 251 F.R.D. 534, 542-43 (D. Nev. 2008); see also S.E.I.U. Local No. 4 Pension Fund v. Pinnacle Health Care of Berwyn LLC, 560 F. Supp. 2d 647, 651 (N.D. Ill. 2008).

In this case, Dr. Hsiao was inadequately prepared for the Rule 30(b)(6) and, therefore, attempted to change his deposition answers by way of the *errata* sheet.  This court concludes that the appropriate sanction is to bar him from contradicting or changing the answers given at the deposition.  This court also concludes that Plaintiff is entitled to the expenses and attorney fees it incurred in bringing its motion regarding the deposition.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiff's Motions for Sanctions (#68, #73) are GRANTED.

(2) Plaintiff's Motion for Order to Bar Contradictions to Deposition and for Sanctions (#104) is GRANTED.

(3) Plaintiff's Motion for Attorney Fees (#114) remains pending and will be resolved following the bench trial scheduled for March 23, 2009, at 9:30 a.m.

(4) Plaintiff's Motion in Limine (#115), filed February 13, 2009, also remains pending. Defendant's Response is due by February 27, 2009.

ENTERED this 18th day of February, 2009.

s/MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE