# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | | |
|---|---|---|
| LINCOLN DIAGNOSTICS, INC., an<br>Illinois corporation, | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. 07-CV-2077** |
| | ) | |
| PANATREX, INC., a California corporation, | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

A bench trial was held in this case on March 23 and 24, 2009.  On May 8, 2009, Plaintiff, Lincoln Diagnostics, Inc., filed its Proposed Findings of Fact and Conclusions of Law (#136).  On June 5, 2009, Defendant, Panatrex, Inc., filed its Proposed Findings of Fact and Conclusions of Law (#137).  On June 19, 2009, Plaintiff filed its Reply to Defendant's Proposed Findings of Fact and Conclusions of Law (#139).  The parties have also filed motions related to the bench trial.  This court has carefully considered the arguments of the parties and the documents filed by the parties.  Following this court's careful and thorough consideration, this court concludes that Plaintiff is entitled to an injunction and attorney's fees under the Lanham Act.  Accordingly, Plaintiff's Motion for Attorney's Fees (#114) is GRANTED.  This court concludes, however, that an award of damages would not be appropriate in this case.  This court further concludes that any relief under the Illinois Deceptive Trade Practices Act would be redundant to the relief already granted and that Plaintiff cannot recover under the Illinois Consumer Fraud and Deceptive Business Practices Act.  As far as the motions filed following the bench trial, this court rules as follows: (1) Plaintiff's Motion to Cite Authority (#138) is GRANTED; (2) Defendant's Motion to Correct Typographical Error (#140) is GRANTED; (3) Plaintiff's Motion for Leave to File Reply (#143) is GRANTED; (4) Plaintiff's Motion to Correct False Statement (#144) is GRANTED; (5) Defendant's Motion to Correct

Typographical Error (#150) is GRANTED; and (6) Plaintiff's Motion to Strike (#149) is DENIED as moot. This case is terminated.

BACKGROUND

On April 18, 2007, Plaintiff filed its Complaint (#1) against Defendant. Plaintiff is an Illinois corporation and Defendant is a California corporation. Both Plaintiff and Defendant manufacture disposable skin testing devices that are used in the diagnosis of allergies. Dr. Ray Ling Hsiao is president of Defendant and resides in Taiwan. Defendant is owned by Dr. Hsiao and other members of his family. In its Complaint, Plaintiff alleged that Defendant made false and misleading marketing statements in printed advertisements, including in *The Journal of Allergy and Clinical Immunology* (Journal), and on its website. Plaintiff sought relief under the Lanham Act, the Illinois Uniform Deceptive Practices Act and the Illinois Consumer Fraud and Deceptive Practices Act.[1] A Discovery Order (#17) was entered on June 27, 2007. During discovery, Plaintiff served Defendant with Requests for Admission of Facts. Defendant did not respond to the Requests for Admission of Facts in a timely manner.[2]

On May 29, 2008, this court entered an Opinion (#52) in this case. This court found that

---

[1] This court has jurisdiction over this action because Plaintiff's claim against Defendant is based, in part, on an alleged violation of a federal statute, the Lanham Act. This court has supplemental jurisdiction over the related state law claims.

[2] This court notes that Defendant has blamed its former attorney for this failure and continues to complain that Defendant has been unfairly deemed to have admitted all of the statements included in Plaintiff's Requests for Admission of Facts. This court notes, however, that it is well settled that an attorney's conduct is imputed to his client. See Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc., 570 F.3d 845, 848-49 (7th Cir. 2009). Defendant chose its attorney and "cannot now avoid the consequences of the acts or omissions of this freely selected agent." Bakery Mach., 570 F.3d at 849; see also Salmeron v. Enter. Recovery Sys., Inc., ___ F.3d ___, 2009 WL 2616036, at *8 n.4 (7th Cir. 2009). Furthermore, this court has observed, throughout the course of this litigation, the fact that Defendant's president, Dr. Hsiao, has attempted to control Defendant's participation in the litigation and often ignores the advice and counsel of Defendant's attorney. Therefore, this court believes that Defendant's attempts to put all of the blame on Defendant's former attorney for the problems Defendant has had in this litigation are somewhat disingenuous.

Defendant's failure to respond in a timely manner to Plaintiff's Requests for Admission of Facts resulted in the admission of all the facts included in the requests, including important facts regarding personal jurisdiction.   By failing to respond to Plaintiff's Requests for Admission of Facts, Defendant admitted that: (a) it regularly and systematically sold the Panatrex Products to one or more customers in the State of Illinois; (b) it engaged in the marketing of the Panatrex Products by various means, including the use of published advertisements in publications, including journals read by allergy clinicians, which journals are regularly and customarily transported into the State of Illinois for readers who are citizens of the State of Illinois; (c) it knew that its printed advertisements would be transported into the State of Illinois for use and would be read by citizens of the State of Illinois; (d) it received funds and  monies from citizens of the State of Illinois from the sale of Panatrex Products on a regular and systematic basis; (e) it has regularly and systematically marketed and advertised for sale the Panatrex Products within the State of Illinois; (f) it has regularly and systematically obtained the benefits and protections of the laws of the State of Illinois; (g) the Journal is transported into the State of Illinois on a regular basis for sale and distribution to subscribers thereof; (h) it sold and caused the delivery of products manufactured by Defendant into the State of Illinois on a regular and systematic basis during calendar years 2005, 2006, and 2007; and (i) Defendant caused the publication of advertisements for Defendant's products to be made with the intent of such advertisements to be received by persons within the State of Illinois during calendar years 2005, 2006, and 2007.[3]

    This court therefore concluded that it has personal jurisdiction over Defendant based upon the "effects doctrine" and also concluded that Defendant had sufficient minimum contacts with the

---

[3]  This court notes that Defendant eventually turned over documents to Plaintiff which confirmed that Defendant had regular and systematic sales into Illinois during the relevant time frame.

3

state of Illinois so that this court could constitutionally exercise personal jurisdiction over Defendant.  Accordingly, this court denied Defendant's Motion to Dismiss.

In its Opinion (#52), this court also granted Plaintiff's Motion for Partial Summary Judgment.  This court noted that, based upon the lengthy statement of Undisputed Facts set out in the Motion, Plaintiff argued that the facts showed that Defendant sought to market its products by "combining" two separate and distinct products and advertising the two products by way of claims that could not be true for both and which were literally false as to either.  Plaintiff also argued that Defendant claimed in its advertisements to possess the approval of the Food and Drug Administration (FDA) although Defendant possesses no such approval.  This court concluded that Defendant was deemed to have admitted the facts included in Plaintiff's Statement of Undisputed Facts because it did not respond to Plaintiff's Requests for Admission of Facts in a timely manner and also did not specifically respond to or dispute the facts in its two-page Response to Motion for Partial Summary Judgment.  This court further concluded that, based upon the undisputed facts set forth by Plaintiff, Plaintiff had shown that it was entitled to judgment as to liability on its claims against Defendant.     This court stated that, based upon the undisputed facts, Plaintiff had shown that Defendant violated the Lanham Act because it had, in connection with the Panatrex Products, used in commerce false and misleading descriptions of fact or false and misleading representations of fact, which: (1) in commercial advertising or promotion, misrepresented the nature, characteristics or qualities of the Panatrex Products; or (2) were likely to cause confusion or mistake, or to deceive, as to the approval by the FDA of the Panatrex Products.  This court noted that, although Plaintiff had the burden of showing that Defendant's advertisements contained a false statement, this was proven conclusively by Defendant's admissions.  This court stated:

>    This court finds that Defendant has admitted making

numerous and repeated statements about the Panatrex Products which were false when made, and known by Defendant to have been false when made, all in an effort to increase the sales of the Panatrex Products in interstate commerce.   This court further finds that Defendant's admission that it included false statements in its advertisements and marketing is evidence that Defendant believed that such statements would convince (or, in reality, confuse) customers to purchase the Panatrex Products.  Therefore, Plaintiff has established that Defendant violated section 43(a) of the Lanham Act [15 U.S.C. § 1125(a)] and Plaintiff is entitled to summary judgment as to liability on this claim.

This court also concluded, based upon the undisputed facts, that Plaintiff had shown that Defendant violated the Illinois Uniform Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act.  This court stated that the case remained scheduled for a bench trial solely on the issue of the proper and appropriate remedy to be awarded to Plaintiff.

This court also granted Plaintiff's Motion to Compel.  In its Motion, Plaintiff pointed out Defendant's almost complete failure to comply with discovery requests in this case.  This court concluded that Plaintiff had shown that Defendant failed to comply with discovery requests so that sanctions under Rule 37 of the Federal Rules of Civil Procedure were warranted.  This court stated that Defendant was "hereby ordered to respond fully and completely to the Interrogatories and Requests for Products served on it, in compliance with the Federal Rules of Civil Procedure, within 30 days of the date of this Opinion."  This court also stated that "Defendant is also ordered to produce for deposition corporate representatives who can provide information regarding Defendant's

5

sales and other matters related to recovery and damages within 30 days of the date of this Opinion."

In addition, this court stated that Plaintiff was entitled to recover the attorney's fees and costs it

incurred as a result of Defendant's failure to respond to written discovery in a proper and timely

manner.[4]

In its Opinion (#52), this court also granted the Motion of Defendant's attorney, Michael A.

Berns, to withdraw as counsel in the case.  This court noted that there was no dispute that there were

irreconcilable differences between Defendant and its counsel.  This court advised Defendant that it

would need to obtain new counsel to represent it because a corporation must be represented by an

attorney.

Subsequently, Defendant obtained new counsel, Paul E. Adami, to represent it in this case.

Defendant's new counsel filed a Motion for Reconsideration of Grant of Partial Summary Judgment.

On July 21, 2008, this court entered an Opinion (#66) which denied the motion.  This court stated

that Defendant had not provided this court with any basis for finding that the failure of Defendant

and its attorney to comply with the clear deadlines set by the court was excusable.  This court noted

that "inattentiveness" is not "excusable" and that Defendant "must be held accountable for the acts

and omissions of [its] attorney[]."  This court therefore concluded that it was well within its

authority to grant Plaintiff's Motion for Partial Summary Judgment based upon Defendant's failure

to timely respond to Plaintiff's Requests for Admission of Facts and Defendant's failure to contest

the Undisputed Material Facts included in Plaintiff's Motion.

Suffice it to say that this litigation did not go smoothly even with liability established and

new counsel representing Defendant.  As the case proceeded, the following orders were entered:

---

[4]  Plaintiff's counsel was ultimately awarded $2,242.67 for the attorney's fees and costs
Plaintiff incurred as a result of Defendant's failure to respond to written discovery in a proper
and timely manner.

On July 31, 2008, Magistrate Judge David G. Bernthal denied Defendant's Motion for Protective Order requesting that Dr. Hsiao's deposition be taken by telephone or in Taiwan.

On August 5, 2008, this court denied Defendant's Second Motion for Protective Order requesting that Plaintiff be prohibited from obtaining certain information sought in discovery. This court ordered Defendant to provide the information and further ordered Dr. Hsiao to appear at the courthouse for a deposition on August 25, 2008.

On September 10, 2008, this court entered an Opinion (#91) which noted that, although Dr. Hsiao had been informed throughout the course of the litigation that he could not represent Defendant (a corporation) and could not file anything in this case or communicate directly with the court, he had persisted in attempting to file documents and in faxing documents directly to the court. This court therefore ordered that certain documents faxed by Dr. Hsiao to the clerk's office were STRICKEN.

On September 16, 2008, this court entered an Opinion (#93) which granted Plaintiff's request for the reasonable expenses, including attorney's fees, it incurred in responding to Defendant's Motion for Protective Order and Second Motion for Protective Order. This court concluded that Defendant had exhibited a "pervasive course of conduct . . . that can only be described as calculated to

frustrate legitimate discovery" and that the Motions for Protective Order were not "substantially justified." This court also granted Plaintiff's Motion for Directions and ruled that Defendant lacked any viable claim of privilege in an e-mail book (which included communications between Dr. Hsiao and Defendant's former counsel) intentionally sent to Plaintiff's counsel by Dr. Hsiao. This court stated that Plaintiff did not need to return or safeguard the documents included in the e-mail book.

On October 3, 2009, this court entered an Order (#97) and ordered Defendant to pay Plaintiff $2,456.25 for the attorney's fees Plaintiff incurred in responding to Defendant's two motions for protective order.

On February 18, 2009, this court entered an Opinion (#118) and noted that this case has had a lengthy and tortured history in this court and that the record showed that Defendant, through its president, Dr. Ray L. Hsiao, had made every effort to avoid providing information to Plaintiff. This court then, following a careful analysis of the history of the case and the issues raised, granted Plaintiff's Motions for Sanctions (#68, #73) and ordered Defendant to pay Plaintiff all of the attorney's fees and costs it had incurred as a result of Defendant's failure to comply with this court's Opinion (#52) ordering compliance with discovery requests. This court also stated that, at the bench trial on damages scheduled for March 23, 2009,

Defendant would not be allowed to present any evidence relevant to the issue of liability and would not be allowed to present any evidence on damages which was not fully disclosed to Plaintiff in discovery. This court also granted Plaintiff's Motion to Bar Contradictions to Deposition and for Sanctions (#104). This court noted that, at the deposition taken on August 25, 2008, there were numerous questions that Dr. Hsaio was unable to answer and that Dr. Hsiao subsequently signed an *errata* sheet, dated October 7, 2008, which set out several pages of changes to the deposition transcript. This court found that Dr. Hsiao was inadequately prepared for the Rule 30(b)(6) deposition and, therefore, attempted to change his deposition answers by way of the *errata* sheet. This court agreed with Plaintiff that sanctions should be imposed on Defendant for designating a corporate representative for deposition who was not prepared for the deposition and was unable to offer useful information on many subjects during the deposition. This court stated that the appropriate sanction was to bar Dr. Hsiao from contradicting or changing the answers given at the deposition. This court also concluded that Plaintiff was entitled to the expenses and attorney's fees it incurred in bringing its motion regarding the deposition.

On March 11, 2009, this court entered an Opinion (#122) which ruled on Plaintiff's Motion in Limine. This court declined to

enter an order completely prohibiting Defendant from presenting any evidence at the upcoming bench trial. This court did conclude, however, that Plaintiff had shown that it was entitled to an order further limiting the evidence Defendant could present at trial in addition to the limitations already imposed by this court. This court ordered that any documents relevant to the issue of damages that Defendant did not produce prior to the "drop dead" date set of September 19, 2008, could not be presented by Defendant at trial. This court further ordered that Defendant could not present testimony regarding any matters which were asked about at the deposition taken on August 25, 2008, and for which no answer was given. This court also ordered that Dr. Hsiao was barred from presenting any non-lay opinion testimony because any such opinions had not been disclosed to Plaintiff.

On March 23 and 24, 2009, the bench trial was held. Gary Hein, Chairman of the Board of Plaintiff, testified on behalf of Plaintiff and Dr. Hsiao testified on behalf of Defendant. Both parties also introduced various exhibits into evidence.

The evidence presented at the bench trial showed that Defendant sold customers its products in the total amount of $1,549,768.25 from January 6, 2003, to August 5, 2008. Defendant's federal income tax returns were admitted into evidence and showed that Defendant has incurred losses during its business operations. The most recent tax return for the period ending July 31, 2008, reported a loss of $55,516.00. Dr. Hsiao testified that neither he, nor any family members of his, received any money from Defendant for the past ten years. Dr. Hsiao testified that, in fact, he has

loaned Defendant money.  Dr. Hsiao testified that he does not understand the term "variable cost" and does not know the costs, excluding overhead, associated with production of Defendant's products.  Dr. Hsiao also testified that he does not know Defendant's overhead costs.  Dr. Hsiao testified at trial that all of the costs reflected on Defendant's tax returns are a direct result and connected to the sale of Defendant's allergy testing products.  The evidence showed that Defendant's other products had only de minimis sales.

Dr. Hsiao also testified that Defendant does not currently have a website.  He stated that, if this court prohibits Defendant from internet advertising, it would not have an effect on Defendant's business because none of Defendant's sales come from internet advertising.  Dr. Hsiao testified, however, that the lack of a website, in the long term, could affect Defendant's reputation because people "will think either something wrong or it is a company so tiny."

Defendant also presented additional exhibits as well as additional testimony of Dr. Hsiao as an offer of proof.  As noted previously, the parties subsequently filed Memoranda with the court and numerous motions.

ANALYSIS

PENDING MOTIONS FILED FOLLOWING BENCH TRIAL

1. MOTION TO CITE AUTHORITY

On June 19, 2009, Plaintiff filed a Motion to Cite Authority (#138).  Plaintiff stated that, due in part to the lack of available documents and information from which it could pursue a claim for lost sales or other damages associated with Defendant's violations of the Lanham Act, the Illinois Deceptive Trade Practices Act, and the Illinois Consumer Fraud and Deceptive Business Practices Act, Plaintiff elected to proceed under the Lanham Act and prove only Defendant's sales.  Plaintiff further stated that a private cause of action under the Illinois Consumer Fraud and Deceptive

11

Business Practices Act requires proof of actual damages. <u>Barbara's Sales, Inc. v. Intel Corp.</u>, 879 N.E.2d 910, 925 (Ill. 2007). Plaintiff stated that, although Defendant had not argued that it is barred from pursuing a private cause of action under the Illinois Consumer Fraud and Deceptive Business Practices Act, it retained the obligation to provide this court with citation to controlling precedent. On July 6, 2009, Defendant filed a Response to Plaintiff's Motion to Cite Authority (#142). Defendant took issue with Plaintiff's "afterthought" argument that it was precluded from seeking damages for lost sales due to alleged failures to provide documents by Defendant. On July 16, 2009, Plaintiff filed a Motion for Leave to File Reply Memorandum of Law in Support of Motion to Cite Authority (#143). Plaintiff attached a proposed Reply Memorandum of Law. On August 3, 2009, Defendant filed a Response to Plaintiff's Motion for Leave to File Reply Memorandum (#145).

This court has carefully reviewed all of the arguments presented by the parties. Following this careful and thorough consideration, this court GRANTS Plaintiff's Motion for Leave to File Reply Memorandum of Law (#143). This court has therefore considered Plaintiff's attached Reply Memorandum of Law. This court also GRANTS Plaintiff's Motion to Cite Authority (#138). This court will consider the <u>Barbara's Sales Inc.</u> case in its ruling following the bench trial. This court agrees with Defendant, however, that Plaintiff did not argue at the bench trial that it was precluded from seeking damages for lost sales because of any failure by Defendant to provide requested documents. At the beginning of the bench trial, Plaintiff's counsel stated that Plaintiff "would not proceed by trying to prove direct damages" but that, rather, "Plaintiff is proceeding under that section [of the Lanham Act] which provides that the Plaintiff may present evidence as to the sales of the offending products." Plaintiff's counsel made no representation that the decision was anything other than an election by Plaintiff as to how it would proceed to prove damages.

   2. MOTIONS TO CORRECT TYPOGRAPHICAL ERRORS and MOTION TO STRIKE

12

Defendant has filed two Motions to Correct Typographical Errors (#140, #150). Plaintiff has responded stating that it has no objection to the correction of typographical errors (#141, #151). Accordingly, Defendant's Motions to Correct Typographical Errors (#140, #150) are hereby GRANTED.

This court notes that Plaintiff filed a Motion to Strike (#149) in which it asked that the Declaration of Ray Ling Hsiao be stricken because it is "unintelligible." This court, however, has granted Defendant's Motion to Correct (#151), which asked this court to correct a typographical error in Dr. Hsiao's Declaration. Because the Declaration has been corrected, this court concludes that Plaintiff's Motion to Strike (#149) must be DENIED as moot.

### 3. MOTION TO CORRECT FALSE STATEMENT

On July 17, 2009, Plaintiff filed a Motion to Correct False Statement of Defendant (#144). Plaintiff stated that, in Defendant's Proposed Findings following the bench trial, Defendant stated that "[a]n injunction is not appropriate where the defendant has ceased the alleged false advertising." Defendant further stated that "[t]he web-site was discontinued in April 2007, and the last journal ad was in April 2007, 23 months prior to trial." Plaintiff argued that this statement was obviously false because an advertisement by Defendant in the Journal from February or March 2009 was admitted into evidence at trial. Plaintiff also argued that it had obtained a copy of a package insert for Defendant's products which included claims this court has determined were false and misleading, including a claim that Defendant's products limit the puncture depth. Plaintiff attached a copy of the package insert. The package insert states, "we have designed a new test device with a stopper according to the needs of allergists. The depth of which it penetrates the skin properly is limited to 0.3 mm, increasing the reproducible accuracy."

On August 3, 2009, Defendant filed its Response to Plaintiff's Motion to Correct False

Statement (#146).  Defendant pointed out that Plaintiff has not argued or shown that any of the claims in Defendant's 2009 Journal ad were false or misleading.  However, Defendant did not dispute that Defendant is using a package insert which includes a claim that Defendant's products limit the puncture depth.  Defendant argued, however, that a package insert is "not advertising and can be seen only after the package is purchased and opened."  Defendant cited no authority for this argument.[5]

This court agrees with Plaintiff that claims in a package insert, unrelated to directions for using the products, are in fact advertising and used for the purpose of selling the products.  This court agrees that the "depth control" statement made by Defendant has no purpose other than to market Defendant's products because it does "not constitute instruction of the reader as to the manner of using" the products.   This court therefore further agrees with Plaintiff that the quoted language in Defendant's Proposed Findings is inaccurate and must be corrected.  Accordingly, Plaintiff's Motion to Correct False Statement (#144) is GRANTED.  For purposes of determining whether an injunction is necessary in this case, this court cannot credit Defendant's untrue statement that it has ceased the alleged false advertising.

### FINDINGS AND CONCLUSIONS FOLLOWING BENCH TRIAL

### 1. LANHAM ACT

Section 43(a) of the Lanham Act "prohibits the use of 'any false description or representation' in advertising."  BASF Corp. v. Old World Trading Co., 41 F.3d 1081, 1088 (7th Cir. 1994),  citing 15 U.S.C. § 1125(a); see also Healthport Corp. v. Tanita Corp. of Am., 563 F. Supp.

---

[5]  This court additionally notes that copies of the correspondence between the parties regarding the package insert, following the bench trial, were attached to Plaintiff's Motion and Defendant's Response.  The correspondence shows that Defendant was extremely evasive and reluctant to provide information regarding the package insert.  This has been Defendant's pattern throughout this litigation.

2d 1169, 1178 (D. Or. 2008), aff'd, 324 Fed. Appx. 921 (Fed. Cir. 2009).  Liability is established

where the challenged advertisement is literally false or is misleading.  See BASF Corp., 41 F.3d at

1188-89.

This court concludes, based upon Defendant's admissions and the evidence presented at trial,

that Defendant made the following advertising claims that were false or misleading on its website[6]

and in the Journal, a respected journal among allergy clinicians: (1) that its products had approval

or qualification by the FDA; (2) that the price for Defendant's Quanti-Test® system was 50-70%

less than Defendant's major competitor; (3) that the use of Defendant's products, due to a "unique

patented design[,]" permitted excess allergen to be wiped out and flow back to the well permitting

savings in the cost of allergens, and use of Defendant's products may save about 50% of the user's

cost; (4) that the Quick-Test® applicator could limit the puncture depth within 0.3-0.4 mm. thereby

preventing false positive results and being more accurate; (5) that, to ensure quality control, the

prong of each Quanti-Test® device is checked by a magnifier glass prior to packaging; (6) that false

positive results can be easily avoided by use of Defendant's products; (7) that Defendant possesses

a clinical study to prove that Defendant's products are so accurate and that Defendant's products are

subject to low false negative results by use of the Carr study; (8) that Defendant's products were

"the" and are "a" most popular skin test device in the world; (9) that use of Defendant's products

can result in a reduced cost without any reduction in efficacy; (10) that Defendant's products include

a cap sealing structure which protects allergens from contamination; and (11) that Defendant's

---

[6]  This court notes that Defendant, through Dr. Hsiao, has spent a great deal of time and effort in this litigation disputing Defendant's "ownership" of the website.  However, Dr. Hsiao testified at the bench trial that Defendant "should be responsible" for what was put on the website because it was called "Panatrex.com."  He also testified that he "should be responsible for most of that."  This court concludes that it is clear that Dr. Hsiao, president of Defendant, controlled the content of the website and that Defendant used the website to advertise its products.

products provide protection not offered by competitive products in avoiding the introduction of unwanted amounts of 1000X allergens into a patient's dermis layer to avoid false positive results. This court further finds that Defendant has included false or misleading statements in the package inserts for its products.

Based upon the facts before it, this court must determine the appropriate remedy or remedies in this case for Defendant's violation of the Lanham Act. Plaintiff has first requested an injunction. The Lanham Act provides that this court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent . . . a violation under section 1125(a) of this title." 15 U.S.C. § 1116(a). As noted previously, this court has already concluded that Defendant violated § 1125(a). Because this court has concluded that Defendant has used advertising which is false or misleading, in violation of the Lanham Act, this court concludes that injunctive relief is appropriate in this case. Defendant has argued that it has ceased all false and misleading advertising so that injunctive relief is not necessary. Plaintiff has shown, however, that although Defendant has admitted the falsity of its "depth control claims," it continues to advance such claims in package inserts for Defendant's products. Accordingly, an injunction prohibiting Defendant from making any false or misleading claims will be entered by this court.

"A party seeking a permanent injunction must establish that (1) it has succeeded on the merits; (2) no adequate remedy at law exists; (3) irreparable harm will arise absent an injunction; (4) the balance of harm favors an injunction; and (5) the public interest will not be harmed." Hot Wax, Inc. v. S/S Car Care, 1999 WL 966094, at *8 (N.D. Ill. 1999). In this case, Plaintiff has proven that Defendant violated the Lanham Act by using false or misleading advertising for its products. A well-established presumption exists that injuries resulting from Lanham Act violations

16

are irreparable, even absent a showing of business loss.  See Abbott Labs. v. Mead Johnson & Co.,
971 F.2d 6, 16 (7th Cir. 1992).  Further, as the court stated in Hot Wax, Inc.:

>The public has a strong interest in eradicating false advertising in the
>marketplace, particularly when the consumer does not receive what
>the consumer believes he or she is paying for when making a
>purchase.  False advertising, by its very nature, harms the consuming
>public.

Hot Wax, 1999 WL 966094, at *8.  This court concludes that Plaintiff's request for an injunction
permanently prohibiting Defendant from disseminating false or misleading statements is warranted
in this case and will be granted.  See Healthport Corp., 563 F. Supp. 2d at 1181.

This court concludes, however, that Plaintiff has not made any showing that an injunction
requiring corrective action is necessary.  Plaintiff has requested that this court order Defendant to
place ads in three successive issues of the Journal retracting the false or misleading claims made in
previous Journal advertisements, to communicate with all of its customers regarding its previous
false claims, with such statement to be approved by this court, and to obtain and destroy all copies
of the false and misleading statements made by Defendant.  Plaintiff has also asked that this court
retain jurisdiction in order to, essentially, oversee Defendant's compliance with these requests.

"Corrective advertising may be appropriate to remedy consumer confusion caused by false
advertising messages."  Healthport Corp., 563 F. Supp. 2d at 1182.  This court concludes, however,
that Plaintiff has not shown that any consumers were and continue to be actually deceived about the
nature of Defendant's products.  See Healthport Corp., 563 F. Supp. 2d at 1182.  Accordingly, this
court finds that corrective advertising is not necessary.  See Healthport Corp., 563 F. Supp. 2d at
1182.  This court concludes that it is sufficient that Defendant is permanently enjoined from using

false or misleading statements in its advertising.  This court further notes that granting Plaintiff's request would place rather draconian obligations on Defendant and would also put a heavy burden on this court to oversee compliance.  This court concludes that Plaintiff has made no showing that these heavy burdens are warranted in this case.  Moreover, Plaintiff made no attempt to cite authority which would support imposing these burdens.

Plaintiff has also requested its attorney's fees under the Lanham Act.  Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).  This "encompasses cases in which the acts of infringement are 'malicious, fraudulent, deliberate or willful.'" BASF Corp., 41 F.3d at 1099; see also Badger Meter, Inc. v. Grinnell Corp., 13 F.3d 1145, 1158 (7th Cir. 1994).  The Seventh Circuit has stated that cases where attorneys' fees are awarded under 15 U.S.C. § 1117(a) "involve truly egregious, purposeful infringement, or other purposeful wrongdoing." Badger Meter, Inc., 13 F.3d at 1159.  The Seventh Circuit has stated that "[p]ursuant to § 1117(a), a case may be declared exceptional and fees may be awarded to a prevailing plaintiff where the defendant's litigation conduct was oppressive." TE-TA-MA Truth Foundation-Family of URI, Inc. v. World Church of the Creator, 392 F.3d 248, 263 (7th Cir. 2004); see also Realty Executives Int'l, Inc. v. Midtown Realty LLC, 2008 WL 111339, at *1 (E. D. Wis. 2008) ("exceptional cases" include those involving egregious conduct by a party in litigation); Visible Sys. Corp. v. Unisys Corp., 2008 WL 352488, at *1 n.2 (D. Mass. 2008), aff'd, 551 F.3d 65 (1st Cir. 2008) (recognizing that an equitable basis for a fee award has been found in cases where a defendant's post-infringing litigation conduct is vexatious and oppressive).  A decision to award attorney's fees under the Lanham Act is firmly committed to the discretion of the district court.  JCW Investments, Inc. v. Novelty, Inc., 482 F.3d 910, 920 (7th Cir. 2007); BASF Corp., 41 F.3d at 1099.

In this case, as recounted above, Defendant has engaged in truly egregious conduct during the course of this litigation.  This court specifically finds that Defendant engaged in a pattern of behavior to avoid its obligation to provide information to Plaintiff.  This pattern included failing to comply with the applicable discovery rules and failing to comply with many, many orders of the court.  This court, in exercising its discretion, concludes that Defendant's egregious and oppressive conduct in this litigation makes this an "exceptional case" under 15 U.S.C. § 1117(a).  See Realty Executives Int'l, Inc., 2008 WL 111339, at *1; see also JCW Investments, Inc., 482 F.3d at 920 (attorney fees properly awarded where "the case took on a life of its own unnecessarily and litigiously").  Defendant has already been ordered to pay attorney's fees to Plaintiff on several occasions and this court concludes that, under the circumstances here, Defendant should pay all of Plaintiff's attorney's fees.   Accordingly, Plaintiff's Motion for Attorney's Fees (#114) is GRANTED.  Plaintiff is allowed 30 days to file an affidavit setting out the total amount of attorney's fees incurred in this case.  Defendant is allowed 14 days to file any objections to the amount of the fees requested.

Plaintiff also seeks damages from Defendant.  Plaintiff has not proceeded under a theory of proving that it suffered lost sales because of Defendant's false or misleading advertising, but instead is requesting an award of damages based upon Defendant's profits.  Under section 43(a) of the Lanham Act, a plaintiff who establishes a violation can recover the defendant's profits "subject to the principles of equity." Healthport Corp., 563 F. Supp. 2d at 1181, quoting 15 U.S.C. § 1117(a); see also Hipsaver Co. v. J.T. Posey Co., 497 F. Supp. 2d 96, 106 (D. Mass. 2007).  This discretionary method for determining a fair recovery for the plaintiff does not require the plaintiff to prove that it suffered any damages on account of the violation of the Lanham Act.  See Badger Meter, Inc., 13 F.3d at 1157.  Moreover, the Seventh Circuit does not require a showing of

19

willfulness in order to award a defendant's profits as a remedy.  Hot Wax, Inc., 1999 WL 966094, at *7, citing Sands, Taylor &Wood Co. v. Quaker Oats Co., 978 F.2d 947, 961 (7th Cir. 1992). However, the Seventh Circuit has made clear that any recovery to a plaintiff under § 1117(a) of the Lanham Act must constitute "compensation" for the plaintiff's losses or for the defendant's unjust enrichment.  Badger Meter, Inc., 13 F.3d at 1157.  The Seventh Circuit has clearly stated that § 1117(a) "does not allow a 'penalty' against the defendant."  Badger Meter, Inc., 13 F.3d at 1157; see also BASF Corp., 41 F.3d at 1092 ("Remedies are intended to make violations of the Act unprofitable, but not to act as a penalty."); Hipsaver Co., 497 F. Supp. 2d at 108-09, quoting Balance Dynamics Corp. v. Schmitt Indus., 204 F.3d 683, 695 n.6 (6th Cir. 2000) (noting that it has been held that, even under a deterrence theory, the principles of equity did not support an award of the defendant's profits "in the absence of harm to the plaintiff or benefit to the defendant").  Under the method chosen by Plaintiff for recovering in this case, the benchmark for determining whether an award constitutes compensation or is a penalty "is the likely benefit accruing to the defendant on account of its" violation of the Lanham Act.  See Badger Meter, Inc., 13 F.3d at 1157.

Plaintiff has asked for an award $1,033,178.80.  This amount is two-thirds of $1,549,768.25, the total sales of Defendant's products from January 6, 2003, to August 5, 2008.  Plaintiff has also requested prejudgment interest on this amount.  Plaintiff argues that it is entitled to an award of Defendant's profits because 15 U.S.C. § 1117(a) provides that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."  Plaintiff contends that Defendant failed to satisfy its burden of proof to establish the costs and expenses associated with the manufacture and sale of the "offending goods." Plaintiff argues that Defendant was unable to identify the costs associated with producing its disposable skin testing products separate from its other products and has been barred from

20

contradicting its responses as a sanction.  Plaintiff relies heavily on Dr. Hsiao's deposition testimony that he was not familiar with the term "gross margin" and lacked the ability to state Defendant's variable costs.  In support of this argument, Plaintiff has relied on Roulo v. Russ Berrie & Co., 886 F.2d 931, 941 (7th Cir. 1989) which states that "[f]ixed costs are not deducted from the profit calculation."[7]

At the bench trial, Defendant produced its tax returns for the relevant years which Plaintiff does not dispute showed that Defendant has incurred losses during its business operations.  In addition, Dr. Hsiao testified that neither he, nor any family members of his, received any money from Defendant for the past ten years.  Dr. Hsiao testified that, in fact, he has loaned Defendant money.  This court therefore concludes that it is not necessary in this case to determine whether Defendant's evidence was adequate to meet its burden of proof regarding "all elements of costs or deduction claimed."  See 15 U.S.C. § 1117(a).  Based upon the evidence presented at the bench trial, this court finds that there is no basis for concluding that a benefit accrued to Defendant from its violation of the Lanham Act.

In Roulo, the case relied upon by Plaintiff, the Seventh Circuit upheld a jury's award of profits in a case where a greeting card company was found to have infringed a competitor's copyright.  The court  concluded that the jury's award of profits was appropriate "under either a deterrence or unjust enrichment theory . . . [g]iven the evidence of intentional imitation and the substantial similarity between the two card lines."  Roulo, 886 F.2d at 941.  Therefore, in Roulo, profits were awarded in a situation "where defendant benefits directly from its wrongful conduct."  Balance Dynamics Corp., 204 F.3d at 695 n.6.  In this case, Plaintiff has not shown that it suffered

---

[7] Plaintiff also cited a lengthy decision of a district court in the Southern District of New York, Malletier v. Dooney & Burke, Inc., 525 F. Supp. 2d 558 (S.D.N.Y. 2007).  Plaintiff did not provide a pinpoint cite and this court did not find that the case supported Plaintiff's argument.

any actual harm or that Defendant derived any actual benefit. See Healthport Corp., 563 F. Supp. 2d at 1182. Accordingly, there is no basis for awarding Plaintiff compensation for its losses or for Defendant's unjust enrichment. Under these circumstances, this court concludes that awarding Plaintiff $1,033,178.80 in damages based upon Defendant's sales would clearly be a "penalty" rather than "compensation." In exercising its discretion, this court therefore declines to award damages to Plaintiff in this case. See BASF Corp., 41 F.3d at 1095-96 (district court did not abuse its discretion in refusing to award disgorgement of profits even where the defendant's evidence regarding costs did not relate solely to the infringing products and district court made no specific finding as to the amount of profits); Badger Meter, Inc., 13 F.3d at 1157-58 (district court did not abuse discretion in refusing to award damages based upon the defendant's profits where the evidence showed that the defendant derived no benefit from its violation of the Lanham Act so that any award would be an impermissible penalty); Healthport Corp., 563 F. Supp. 2d at 1182 (damages not warranted where no evidence was presented that the counterdefendant profited from its misrepresentations); Hipsaver Co., 497 F. Supp. 2d at 109 (Lanham Act not intended to provide a windfall so equitable factors should be considered to avoid "windfall" to plaintiff). Because no damages have been awarded, there is also no basis for awarding prejudgment interest.

## 2. ILLINOIS DECEPTIVE TRADE PRACTICES ACT

This court concludes that Plaintiff has not shown that it is entitled to any relief for Defendant's violation of the Illinois Deceptive Trade Practices Act that Plaintiff has not already been awarded under the Lanham Act. Therefore, this court finds that it is unnecessary to address Plaintiff's claims for relief under the Illinois Deceptive Trade Practices Act.

## 3. ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

This court has granted Plaintiff's Motion to Cite Authority (#138) and allowed Plaintiff to

cite the case of <u>Barbara's Sales, Inc.</u> to this court.  In <u>Barbara Sales, Inc.</u>, the Illinois Supreme Court stated that a "private cause of action under section 10(a) [of the Illinois Consumer Fraud and Deceptive Business Practices Act] requires proof of 'actual damage.'"  <u>Barbara Sales, Inc.</u>, 879 N.E.2d at 925, <u>citing</u> 815 Ill. Comp. Stat. 505/10a(a) (West 2002).  Plaintiff has conceded that, at the bench trial, it "proceeded with presentation of evidence without proffering evidence of lost sales or other causally related matters associated with [Defendant's] false marketing claims."  In other words, Plaintiff provided no proof of any actual damages.  Accordingly, this court now concludes that Plaintiff cannot recover under the Illinois Consumer Fraud and Deceptive Business Practices Act because it has not shown that it suffered any actual damage.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiff's Motion to Cite Authority (#138) is GRANTED.

(2) Defendant's Motion to Correct Typographical Error (#140) is GRANTED.

(3) Plaintiff's Motion for Leave to File Reply (#143) is GRANTED.

(4) Plaintiff's Motion to Correct False Statement (#144) is GRANTED.

(5) Defendant's Motion to Correct Typographical Error (#150) is GRANTED.

(6) Plaintiff's Motion to Strike (#149) is DENIED as moot.

(7) Following the bench trial, and briefing by the parties, this court concludes that Plaintiff is entitled to an injunction and attorney's fees in this case.

(8) Accordingly, Plaintiff's Motion for Attorney's Fees (#114) is GRANTED.  Plaintiff is allowed 30 days to file an affidavit setting out the total amount of attorney's fees incurred in this case.  Defendant is allowed 14 days to file any objections to the amount of the fees requested.

(9) This court hereby orders that Defendant, and any entity acting on Defendant's behalf, is permanently enjoined from making any of the following claims in any form of advertising, including

in package inserts in Defendant's products: (1) that its products have approval or qualification by the FDA; (2) that the price for Defendant's Quanti-Test® system is 50-70% less than Defendant's major competitor; (3) that the use of Defendant's products, due to a "unique patented design[,]" permit excess allergen to be wiped out and flow back to the well permitting savings in the cost of allergens, and use of Defendant's products may save about 50% of the user's cost; (4) that the Quick-Test® applicator can limit the puncture depth within 0.3-0.4 mm. thereby preventing false positive results and being more accurate; (5) that, to ensure quality control, the prong of each Quanti-Test® device is checked by a magnifier glass prior to packaging; (6) that false positive results can be easily avoided by use of Defendant's products; (7) that Defendant possesses a clinical study to prove that Defendant's products are more accurate and that Defendant's products are subject to low false negative results by use of the Carr study; (8) that Defendant's products are "the" and/or "a" most popular skin test device in the world; (9) that use of Defendant's products can result in a reduced cost without any reduction in efficacy; (10) that Defendant's products include a cap sealing structure which protects allergens from contamination; and (11) that Defendant's products provide protection not offered by competitive products in avoiding the introduction of unwanted amounts of 1000X allergens into a patient's dermis layer to avoid false positive results.

 (10) This case is terminated.

ENTERED this 16th day of September, 2009

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE
